[No. D052325. Fourth Dist., Div. One. Feb. 23, 2009.]

CYNTHIA E. TOWNSEND, Plaintiff and Appellant, v.
JAMES TOWNSEND II, as Trustee, etc., Defendant and Respondent.

**COUNSEL**

Richard H. Benes and Stephen A. Bond for Plaintiff and Appellant.

Flynn & Stillman and Philip H. Stillman for Defendant and Respondent.

OPINION

AARON, J.—

I.

INTRODUCTION

A no contest clause is statutorily defined as "a provision in an otherwise valid instrument that, if enforced, would penalize a beneficiary if the beneficiary files a contest with the court." (Prob. Code, § 21300, subd. (d).)[1] Pursuant to section 21305, subdivision (a)(3), "A challenge to the validity of an instrument . . . other than the instrument containing the no contest clause," does "not constitute a contest unless expressly identified in the no contest clause as a violation of the clause . . ." (§ 21305, subd. (a)).

*Estate of Rossi* (2006) 138 Cal.App.4th 1325, 1329 [42 Cal.Rptr.3d 244] (*Rossi*), the Court of Appeal concluded that pursuant to section 21305, subdivision (a), a no contest clause contained in a trust that, by its terms, applied to any action that sought to " 'void, nullify or set aside this trust or any of its provisions,' " would not be triggered by an action that sought to invalidate an *amendment* to the trust. In *Perrin v. Lee* (2008) 164 Cal.App.4th 1239, 1242 [79 Cal.Rptr.3d 885] (*Perrin*), the Court of Appeal extended *Rossi* in concluding that a similarly worded no contest clause contained in a trust would not apply to amendments to the trust even where the amendments expressly confirmed and ratified the provisions of the trust. In this appeal, we follow *Rossi* and *Perrin* and hold the trial court erred in concluding that a beneficiary's proposed challenge to an amendment to a trust would violate the trust's no contest clause.

II.

FACTUAL AND PROCEDURAL BACKGROUND

A. *The relevant documents and parties*

In September 2006, James E. Townsend (James) and his wife, Patricia Townsend (Patricia), jointly as trustors, executed a document entitled "EIGHTH AMENDMENT TO DECLARATION OF TRUST (A Complete Restatement)" (the Trust). The Trust states that James and Patricia have three children, Cynthia E. Townsend (Cynthia), Mark J. Townsend, and James E. Townsend II (James II).

---

[1] Unless otherwise specified, all subsequent statutory references are to the Probate Code.

The Trust provides generally that, upon the death of either trustor, the trustee shall allocate the assets of the Trust estate into two subtrusts, a "Survivor's Trust" and an "Exempt Trust." The Trust also provides that the surviving trustor may amend or revoke the Survivor's Trust and may appoint the assets of the Exempt Trust among the trustor's descendents. The Trust further provides that upon the surviving trustor's death, the trustee is to divide the assets of the Exempt Trust and Survivor's Trust "into as many equal shares as may be necessary to allocate one such equal share to each child of the Trustors who survives the Surviving Trustor and one such equal share to each group composed of the descendants of a deceased child of the Trustors who survive the Surviving Trustor." The Trust identifies James II as the successor trustee of the Trust.

Article 12 of the Trust is entitled "Trust Administration." Section F of article 12 is a no contest clause that provides: "No contest: In the event any person shall, singly or in conjunction with any other person or person, contest in any court the validity of the Will of either Trustor or the trusts established under this instrument or shall seek to obtain an adjudication in any proceeding in any court that this trust or any of its provisions, or that such will or any of its provisions, is void, or seek in any manner to void, nullify, or set aside this trust or any of its provisions, then the right of that person to serve as Trustee or to take any interest given to him or her or any descendant of his or hers by this trust shall be determined as it would have been determined had the person failed to survive either Trustor and left no living descendants. The Trustee is hereby authorized to defend, at the expense of the trust estate, any contest or other attack of any nature on any of its provisions. Prior to making any distribution of trust property to or for the benefit of the beneficiary of any trust under this instrument, the Trustee may obtain from such beneficiary a written release, in a form satisfactory to the Trustee, of any action set forth in the preceding provision of this Section."

Patricia died on November 25, 2006, making James the surviving trustor.

On December 28, 2006, James, as surviving trustor, executed a document entitled "FIRST AMENDMENT TO THE SURVIVOR'S TRUST UNDER THE JAMES E. TOWNSEND TRUST" (First Amendment). The First Amendment provides that upon the death of the surviving trustor, the trustee is to distribute to Cynthia $500,000 in five annual installments, and is to divide the balance of the Survivor's Trust "into as many equal shares as may be necessary to allocate one such equal share to each son of the Trustors, namely, MARK J. TOWNSEND and JAMES E. TOWNSEND II, who survives the Surviving Trustor, and one such equal share to each group composed of the descendants of a deceased son of the Trustors who survive

the Surviving Trustor." The First Amendment also provides, "In all other respects, the Surviving Trustor hereby ratifies all of the terms and conditions of the Survivor's Trust."

That same day, James, as surviving trustor, executed a document entitled "EXERCISE OF SPECIAL POWER OF APPOINTMENT BY JAMES E. TOWNSEND UNDER THE EXEMPT TRUST OF THE JAMES E. TOWNSEND TRUST" (Power of Appointment). Through the Power of Appointment, James provided that upon his death, the trustee was to divide the balance of the Exempt Trust "into as many equal shares as may be necessary to allocate one such equal share to each son of the Trustors, namely, MARK J. TOWNSEND and JAMES E. TOWNSEND II, who survives the Surviving Trustor, and one such equal share to each group composed of the descendants of a deceased son of the Trustors who survive the Surviving Trustor."

James died three days later, on December 31, 2006.

B. *Cynthia's section 21320, subdivision (a) petition*

In June 2007, Cynthia filed a petition pursuant to section 21320, subdivision (a)[2] to determine whether a proposed petition that she intended to file would violate the Trust's no contest clause. In her section 21320, subdivision (a) petition, Cynthia stated that the proposed petition would raise challenges to the validity of the First Amendment and to the Power of Appointment, among other claims: "The [p]roposed [p]etition, if filed, would seek an order of this court (a) determining that the [First Amendment and the Power of Appointment] are invalid and/or rescinded due to James' incapacity, the undue influence and fraud of James II and Mark, and James' mistake; (b) determining that by reason of their undue influence and fraud James II and Mark have violated the [Trust's] no contest clause and have forfeited their rights to serve as trustee of the trust and their rights and rights of their descendants to take any beneficial interest under the trust; (c) determining that James II holds title to all trust assets, as well as all income therefrom, as constructive trustee for the benefit of Cynthia; (d) awarding Cynthia punitive damages for the conduct of James II and Mark, who have been guilty of oppression, fraud and malice; and (e) granting Cynthia attorney's fees and costs."

---

[2] Section 21320, subdivision (a) provides in relevant part, "If an instrument containing a no contest clause is or has become irrevocable, a beneficiary may apply to the court for a determination of whether a particular motion, petition, or other act by the beneficiary, including, but not limited to . . . an action pursuant to Section 21305 . . . would be a contest within the terms of the no contest clause."

Cynthia claimed that the First Amendment and the Power of Appointment substantially reduced her share of the Trust estate. Cynthia attached copies of her proposed petition, the Trust, the First Amendment, and the Power of Appointment as exhibits to her section 21320, subdivision (a) petition.

In her section 21320, subdivision (a) petition, Cynthia argued that a no contest clause may not be interpreted "beyond what was plainly the testator's intent." (Citing § 21304.) Cynthia also argued that section 21305, subdivision (a)(3) applied to the no contest clause in the Trust because James and Patricia executed the Trust after January 1, 2001. Cynthia noted that section 21305, subdivision (a) provides in relevant part:

"(a) For instruments executed on or after January 1, 2001, the following actions do not constitute a contest unless expressly identified in the no contest clause as a violation of the clause: [¶] . . . [¶]

"(3) A challenge to the validity of an instrument, contract, agreement, beneficiary designation, or other document, other than the instrument containing the no contest clause."

Cynthia claimed that pursuant to section 21305, subdivision (a)(3) and *Rossi, supra*, 138 Cal.App.4th 1325, her proposed challenges to the First Amendment and to the Power of Appointment did not violate the Trust's no contest clause, arguing: "The application of the no contest clause does not extend to other instruments or documents affecting disposition of the trust estate. More specifically, the no contest clause makes no reference to any amendment to the trust, or to the exercise of a power of appointment over the trust estate. Therefore, a challenge to the [First Amendment and the Power of Appointment] is not an action that violates the no contest clause of the [Trust]."

James II, as trustee of the Trust, filed a response to Cynthia's section 21320, subdivision (a) petition. In his response, James II argued that there was "no question as to the Trustor's[3] intent in adding the no contest clause to the [Trust], and Cynthia does not allege any uncertainty: the Trustor intended that a contest by any one of the beneficiaries of . . . either the Survivor's Trust or the Exempt Trust would trigger forfeiture of the testamentary gifts to each of them." James II claimed that Cynthia's challenge to the validity of either the First Amendment or the Power of Appointment would violate the Trust's no contest clause. James II also argued that Cynthia's proposed petition would violate the no contest clause of the Trust to the extent that the petition sought

---

[3] Although James II's response uses the term trustor in the singular, James and Patricia were trustors of the Trust.

to eliminate the right of James II or Mark to receive any portion of the Trust's assets on the ground that they had contested the validity of the Trust.

James II also cited section 82, subdivision (a)(1), which defines a "trust" as including, "An express trust, private or charitable, *with additions thereto*, wherever and however created." (Italics added.) James II argued that pursuant to the italicized phrase in section 82, subdivision (a)(1), "the statute includes amendments to the Trust document as part of the trust."

In addressing Cynthia's claim that pursuant to section 21305, subdivision (a)(3) and *Rossi, supra*, 138 Cal.App.4th 1325, the no contest clause in the Trust did not apply to her proposed challenges to the First Amendment and to the Power of Appointment, James II noted that section 21305, subdivision (c) provides, "Subdivision (a) does not apply to a codicil or amendment to an instrument that was executed on or after January 1, 2001, unless the codicil or amendment adds a no contest clause or amends a no contest clause contained in an instrument executed before January 1, 2001." James II claimed that pursuant to section 21305, subdivision (c), neither the First Amendment nor the Power of Appointment were subject to section 21305, subdivision (a). In addition, with respect to the First Amendment, James II claimed that *Rossi, supra*, 138 Cal.App.4th 1325 was distinguishable. James II argued that, unlike in *Rossi*, the First Amendment "incorporate[d] by reference the terms and conditions of [the Trust]," and thereby incorporated the no contest clause of the Trust into the First Amendment.

Cynthia filed a reply in which she argued that the *Rossi* court had rejected an identical argument regarding the applicability of section 21305, subdivision (c) to a trust that had been executed after January 1, 2001. Cynthia also argued that James II's attempt to distinguish *Rossi* on the ground that the First Amendment incorporated the no contest clause of the Trust was unavailing because the First Amendment merely ratified the Trust's provisions, and did not in fact incorporate the Trust's provisions.

The trial court issued a tentative ruling granting Cynthia's section 21320, subdivision (a) petition in part, and denying it in part. The court ruled, "[T]he proposed petition is denied safe harbor to the extent it challenges the First Amendment to the Trust. It is granted safe harbor to the extent it contests the validity of the Power of Appointment." The trial court rejected James II's argument that section 21305, subdivision (c) rendered section 21305, subdivision (a) inapplicable to Cynthia's petition. Further, the trial court reasoned that the holding in *Rossi* applied to Cynthia's proposed petition to the extent that the petition sought to invalidate the Power of Appointment. However, the trial court ruled that *Rossi* was distinguishable with respect to Cynthia's proposed challenge to the First Amendment to the Trust, reasoning

that, unlike in *Rossi*, the amendment at issue in this case "specifically ratified the terms of the trust," including the Trust's no contest clause.[4]

Cynthia subsequently filed a supplemental brief in which she argued that the trial court erred in failing to apply *Rossi* to her proposed challenge to the First Amendment. Thereafter, the trial court held a hearing at which it heard argument from Cynthia's counsel.[5]

On December 13, 2007, the court affirmed its tentative ruling and issued a final order that is identical in all material respects to its tentative ruling.

On January 11, 2008, Cynthia timely filed a partial appeal from the trial court's December 13 order. In her notice of appeal, Cynthia stated that she appealed from the court's order "to the extent it denies safe harbor with regard to [her] proposed challenge to the First Amendment to the Trust."[6]

III

DISCUSSION

A. *James II's failure to file an appeal from the trial court's order granting safe harbor to Cynthia's proposed petition to the extent that the petition contests the validity of the James II's exercise of the Power of Appointment, precludes appellate review of this issue*

As an initial matter, we address the scope of the issues that we may address in this appeal. In his respondent's brief, James II claims that the trial court erred in granting Cynthia's petition in part, in concluding that Cynthia's proposed challenge to the validity of James II's exercise of the Power of Appointment would not violate the Trust's no contest clause.

---

[4] The trial court did not address in its order whether Cynthia's proposed petition would violate the Trust's no contest clause insofar as it sought a determination that James II and Mark had violated the Trust's no contest clause. Nor did the court address in its order whether Cynthia's proposed petition would constitute a violation of the Trust's no contest clause insofar as it sought various remedies such as punitive damages and attorney fees. Cynthia has not raised any claim on appeal with respect to these issues. We therefore express no opinion as to any of these issues.

[5] For reasons not clear from the record, James II's counsel did not appear at the hearing.

[6] The trial court's December 13 order is appealable. (§ 1304 ["With respect to a trust, the grant or denial of the following orders is appealable . . . [¶] . . . [¶] (d) Determining whether an action constitutes a contest"]; Code Civ. Proc., § 904.1, subd. (a)(10) [providing that an appeal may be taken "[f]rom an order made appealable by the provisions of the Probate Code"].)

The trial court's granting of Cynthia's petition in this regard was an appealable order. (§ 1304; Code Civ. Proc., § 904.1, subd. (a)(10).) However, James II did not file an appeal from the trial court's order. Therefore, James II has forfeited his right to seek reversal of this portion of the trial court's order. (See *Estate of Powell* (2000) 83 Cal.App.4th 1434, 1439 [100 Cal.Rptr.2d 501] [respondent who has not filed appeal "cannot seek . . . affirmative relief," and may not raise claim of error other than to seek affirmance of trial court ruling].) Accordingly, we restrict our analysis to the issue that Cynthia presents in her appeal, namely, whether the trial court erred in concluding that Cynthia's proposed petition would violate the no contest clause insofar as the petition seeks to invalidate the First Amendment.

B. *Cynthia's proposed petition does not violate the no contest clause insofar as it seeks to invalidate the First Amendment*

■ Cynthia claims that the trial court erred in concluding that her proposed petition would violate the no contest clause insofar as the petition seeks to invalidate the First Amendment. Cynthia's claim raises a pure question of law, which we review de novo. (*Meyer v. Meyer* (2008) 162 Cal.App.4th 983, 990 [76 Cal.Rptr.3d 546] ["the standard of review as to whether the proposed petition would amount to a contest within the meaning of the no contest clause is de novo . . ."].)

1. *Governing law*

a. *Relevant provisions of the Probate Code*[7]

■ Division 11, part 3, chapter 1 of the Probate Code contains several provisions related to the enforceability and interpretation of no contest clauses. Section 21300 provides a list of definitions that apply to the provisions of the Probate Code addressing no contest clauses:

"As used in this part:

"(a) 'Contest' means any action identified in a 'no contest clause' as a violation of the clause. The term includes both direct and indirect contests.

"(b) 'Direct contest' in an instrument or in this chapter means a pleading in a proceeding in any court alleging the invalidity of an instrument or one or more of its terms based on one or more of the following grounds:

---

[7] The Legislature has recently adopted a major revision of California law pertaining to the enforceability and interpretation of no contest clauses, including a repeal of all of the provisions of the Probate Code that we cite in this section. (Stats. 2008, ch. 174, §§ 1–2.) However, because the statute provides that it shall "become operative on January 1, 2010" (*id.*, § 3), the Probate Code provisions cited below remain in effect and govern the disposition of this appeal.

"(1) Revocation.

"(2) Lack of capacity.

"(3) Fraud.

"(4) Misrepresentation.

"(5) Menace.

"(6) Duress.

"(7) Undue influence.

"(8) Mistake.

"(9) Lack of due execution.

"(10) Forgery.

"(c) 'Indirect contest' means a pleading in a proceeding in any court that indirectly challenges the validity of an instrument or one or more of its terms based on any other ground not contained in subdivision (b), and that does not contain any of those grounds.

"(d) 'No contest clause' means a provision in an otherwise valid instrument that, if enforced, would penalize a beneficiary if the beneficiary files a contest with the court."

Sections 21301 and 21302 describe the applicability of the Probate Code to no contest clauses. (§ 21301 ["This part is not intended as a complete codification of the law governing enforcement of a no contest clause. The common law governs enforcement of a no contest clause to the extent this part does not apply."]; § 21302 ["This part applies notwithstanding a contrary provision in the instrument."].) Section 21303 provides for the general enforceability of no contest clauses and states, "Except to the extent otherwise provided in this part, a no contest clause is enforceable against a beneficiary who brings a contest within the terms of the no contest clause." However, section 21304 provides, "In determining the intent of the transferor, a no contest clause shall be strictly construed."

Section 21305 outlines actions that do not constitute a contest under various circumstances. That section provides in relevant part:

"(a) For instruments executed on or after January 1, 2001, the following actions do not constitute a contest unless expressly identified in the no contest clause as a violation of the clause:

"(1) The filing of a creditor's claim or prosecution of an action based upon it.

"(2) An action or proceeding to determine the character, title, or ownership of property.

"(3) A challenge to the validity of an instrument, contract, agreement, beneficiary designation, or other document, other than the instrument containing the no contest clause. [¶] . . . [¶]

"(c) Subdivision (a) does not apply to a codicil or amendment to an instrument that was executed on or after January 1, 2001, unless the codicil or amendment adds a no contest clause or amends a no contest clause contained in an instrument executed before January 1, 2001."

### b. *Relevant case law*

In *Rossi*, the beneficiary of a trust filed a safe harbor application seeking to challenge a trust amendment on the ground of undue influence. (*Rossi, supra,* 138 Cal.App.4th at p. 1328.) Both the trust instrument and the amendment in question were executed after 2001. (*Id.* at p. 1335.) The trust contained a no contest clause that applied by its terms to any action that sought to " 'void, nullify or set aside this trust or any of its provisions . . . .' " (*Id.* at p. 1329.)[8] However, the no contest clause in the trust did not specifically refer to amendments to the trust, and the trust amendment did not contain a no contest clause. (138 Cal.App.4th at p. 1329.)

The successor trustee (Toinette) claimed that because the trust amendment in question did not add or amend a no contest clause, section 21305, subdivision (c) rendered section 21305, subdivision (a) inapplicable. The *Rossi* court rejected this interpretation of section 21305, subdivision (c):

"We reject Toinette's reading of subdivision (c). Toinette's interpretation suggests subdivision (a) is inapplicable so long as an amendment makes no

---

[8] The no contest clause in the trust in *Rossi* provided in full: " 'In the event any beneficiary under this trust shall, singly or in conjunction with any other person or persons, contest in any Court the validity of this trust or of the Settlor's last Will or shall seek to obtain an adjudication in any proceeding in any Court that this trust or any of its provisions or that such Will or any of its provisions is void, or seek otherwise to void, nullify or set aside this trust or any of its provisions, then the right of that person to take any interest given to him or her by this trust shall be determined as it would have been determined had the person predeceased the execution of this Declaration of Trust.' " (*Rossi, supra,* 138 Cal.App.4th at p. 1329.)

change in the no contest clause of the original trust instrument or declaration, regardless of whether the decedent executed the original instrument before or after January 1, 2001, the effective date of section 21305. Such an interpretation renders superfluous the last phrase of subdivision (c), 'contained in an instrument executed before January 1, 2001.'

"Moreover, the plain language of the first clause of subdivision (c) provides that subdivision (a) does not apply to a codicil or amendment to an instrument executed on or after January 1, 2001. This is so because the instrument itself, executed on or after that date is already subject to subdivision (a). Subdivision (c) merely clarifies that a testator or settlor with a post-2001 will or trust that already contains a no contest clause that meets subdivision (a)'s specificity requirements need not repeat the no contest clause in a codicil or amendment in order to have the no contest clause apply to the will or trust.

"This interpretation harmonizes subdivision (c) with subdivision (a)(3)." (*Rossi, supra*, 138 Cal.App.4th at pp. 1337–1338.)

Toinette also claimed that section 21305, subdivision (a)(3) applied only to nontestamentary instruments. The *Rossi* court rejected this argument as well. (*Rossi, supra*, 138 Cal.App.4th at p. 1339 [stating "there is nothing in the language of subdivision (a)(3) that suggests the Legislature intended to restrict the application of subdivision (a) in [such] a . . . manner"].) The *Rossi* court applied section 21305, subdivision (a)(3), and rejected Toinette's argument that the amendment to the trust was subject to the trust's no contest clause: "The language in subdivision (a)(3) clearly recognizes instruments or other documents separate from the instrument containing the no contest clause, and that those separate instruments or documents may be the subject of a safe harbor challenge. Here, the second amendment is such a document. It is separate from the instrument containing the no contest clause since it does not contain a no contest clause. And it is subject to challenge without violating the no contest clause of the instrument, because the instrument's no contest clause language failed to expressly identify the action as a violation." (*Rossi, supra*, 138 Cal.App.4th at p. 1338.)

In *Perrin, supra*, 164 Cal.App.4th at pages 1241–1244, the guardian ad litem of two beneficiaries of a trust, who were minors, filed a safe harbor application seeking to challenge two trust amendments on the grounds of undue influence and that the trustor was not of sound mind at the time she amended the trust. The trust contained a no contest clause that provided as follows: " 'The beneficial provisions of this Agreement and of the Grantor's Last Will[] and Testament, which make reference to this Agreement, are intended to be in lieu of any other right, claims or interests of whatsoever

nature, whether statutory or otherwise . . . , which any beneficiary hereunder may have against or in the estate of the Grantor . . . or the properties in trust hereunder. Accordingly, if any beneficiary hereunder asserts any claim whatsoever . . . , statutory election, or other right or interest against or in a Grantor's estate, . . . Grantor's Will, any properties of this trust, other than pursuant to the express terms hereof or of said Will, or directly or indirectly contests, disputes, or calls into question, before any tribunal, the validity of this Agreement or of said Will or the validity of any provisions of this Agreement or of said Will, then (1) all costs related to any such assertion by such beneficiary shall be directly charged to and borne by such beneficiary's interests hereunder, and (2): [¶] (a) such beneficiary shall thereby absolutely forfeit any and all beneficial interests of whatsoever kind and nature which such beneficiary might otherwise have under this Agreement . . . ; [and] [¶] (b) all of the provisions of this Agreement, to the extent that they confer any benefits, powers, or rights whatsoever upon such claiming, electing, or contesting beneficiary, shall thereupon become absolutely void and revoked . . . .' " (*Perrin, supra,* 164 Cal.App.4th at p. 1243.)

Although, as in *Rossi,* neither of the trust amendments in question in *Perrin* contained a no contest clause, each amendment contained a provision that stated, " 'In all other respects, Grantor and Trustee hereby confirm and ratify said Trust Agreement as originally executed and as heretofore amended.' " (*Perrin, supra,* 164 Cal.App.4th at p. 1243.)

The trial court in *Perrin* concluded that the proposed challenge to the amendments would violate the trust's no contest clause, explaining that " 'the no contest clause in the trust [was] incorporated into the amendments,' " by virtue of the amendments' confirmation and ratification provisions. (*Perrin, supra,* 164 Cal.App.4th at p. 1244.) On appeal, the guardian ad litem contended that the trial court had failed to follow *Rossi.* (*Id.* at p. 1245.) The trustee contended that *Rossi* was distinguishable in light of the confirmation and ratification provisions. (*Id.* at p. 1246.)

The *Perrin* court reiterated *Rossi*'s holding that for trusts executed on or after January 1, 2001, a trust's no contest clause may not be applied to an amendment of the trust unless there is a specific reference to amendments to the trust in the trust's no contest clause: "In the case before us, we see that the Trust, executed in 2005, did not explicitly state that a contest to an amendment would violate the no contest clause of the Trust, such that the Guardian's challenge to the second and third amendments would cause the 'disinheritance' of the Trustor's minor children. Inasmuch as the Trust omitted, despite the existence of section 21305, subdivision (a)(3), to specifically state that a challenge to an amendment would constitute a contest to

which the no contest clause of the Trust would apply, we cannot construe the no contest clause as so applying." (*Perrin, supra,* 164 Cal.App.4th at p. 1247.)

The *Perrin* court further concluded that the confirmation and ratification provisions contained in the amendments were not sufficient to incorporate the trust's no contest clause into the amendments:

"[W]e do not mean to say that a trust amendment could never be drafted in such a manner as to clearly incorporate a no contest clause contained in the original trust instrument into the amendment itself, thereby making the no contest clause applicable to a challenge to the amendment. However, in the case before us, the language of the amendments is not so drafted.

■ " 'Incorporation by reference occurs when "one writing, which is a complete testamentary instrument in itself, must refer to another document in such a manner as to incorporate it." [Citations.]' [Citation.] ' "[T]here is incorporation by reference when one of the writings is a complete testamentary instrument, and refers to another document in a manner clearly designed to accomplish that purpose." ' [Citation.] Here, we cannot say that the language of the amendments in question was 'clearly designed' to accomplish the purpose of incorporation by reference.

"Rather, the two amendments each state that they 'confirm and ratify' the Trust. 'To confirm is "to make firm or certain; to . . . give new assurance of truth or certainty; to put past doubt . . ." [citation].' [Citations.] To ratify is 'to approve and sanction' or 'to confirm the truth of.' [Citation.] The term has also been defined to mean: 'To give approval. To confirm. To make a ratification.' [Citation.]

"The words used in the amendments in question plainly indicate the Trustor intended that, except to the extent particular terms of the Trust were specifically changed by the amendments, the remaining, unchanged terms of the Trust would continue in full force and effect. Of course, the no contest clause set forth in section 9.5 of the Trust does not state that it is applicable to amendments. And, there is no indication in the language of the amendments that the Trustor meant to incorporate the section 9.5 no contest clause into the body of each amendment, so that the language regarding any challenge to 'the validity of this Agreement' would mean a challenge to the validity of the amendment itself, rather than to the Trust as originally executed. The language of the amendments in this case shows that the Trustor intended to remove from doubt any question as to the effectiveness of the terms of the Trust that were not amended. It simply does not demonstrate an

intent on the part of the Trustor to accomplish the incorporation by reference that the Trustee suggests." (*Perrin, supra,* 164 Cal.App.4th at p. 1248.)

The *Perrin* court concluded that the trial court had erred in concluding that the guardian's proposed challenge to the trust's amendments would violate the trust's no contest clause, and reversed the trial court's order denying the guardian's safe harbor petition. (*Perrin, supra,* 164 Cal.App.4th at p. 1250.)

### 2. *Analysis*

#### a. *Section 21305, subdivision (a) applies in this case*

Citing section 21305, subdivision (c) in his brief on appeal, James II states, "The plain language of the first clause of [section 21305, subdivision (c)] provides that subdivision (a) does not apply to a codicil or amendment to an instrument executed on or after January 1, 2001." Although his brief is not entirely clear in this regard, it could be read to raise the same argument regarding section 21305, subdivision (c) that was made by the successor trustee in *Rossi*. To the extent that James II intends to raise this argument, we reject it for the reasons stated in *Rossi*. (See pt. III.B.1.b., *ante.*)[9]

James II states in his brief, "[I]f this Court determines that the no contest clause in the [Trust] is sufficiently specific to include challenges to other instruments that do not contain a no contest clause, such as the [First Amendment] . . . there is no need to repeat the no contest clause in the subsequent instrument."

Whether the no contest clause is "sufficiently specific" to include a challenge to the First Amendment is governed by section 21305, subdivision (a) as that provision has been interpreted in *Rossi* and *Perrin*. We consider that issue below.

#### b. *Pursuant to* Rossi *and* Perrin, *a challenge to the First Amendment does not violate the Trust's no contest clause*

The Trust in this case contains a no contest clause that cannot be meaningfully distinguished from the no contest clause that was at issue in *Rossi*. Although James II does not directly challenge the reasoning of *Rossi*, he does offer several arguments in support of his contention that the no contest clause of the Trust has "the [r]equisite [s]pecificity" to apply to Cynthia's challenge to the amendment. James II notes that the no contest

---

[9] James II explicitly raised this argument in the trial court, and the trial court properly rejected it, citing *Rossi*. (See pt. II.B., *ante.*)

clause in the Trust provides that it applies to any action that seeks to "void, nullify, or set aside this trust or any of its provisions." However, the identical language appeared in the no contest clause at issue in *Rossi*. (See fn. 8, *ante*.) Thus, *Rossi* cannot be distinguished on this ground.[10]

 James II notes that section 82 provides in relevant part, "(a) 'Trust' includes the following: [¶] (1) An express trust, private or charitable, *with additions thereto*, wherever and however created." (Italics added.) James II claims that the italicized portion of the statute indicates that "amendments to the Trust documents [are] part of the trust." We reject this argument and conclude that the term "addition" is used in this statute to refer to additions of *property* to the Trust, not to amendments to the Trust's provisions. (See, e.g., § 6303 ["This chapter may be cited as the Uniform Testamentary Additions to Trusts Act."]; *Farley v. Farley* (1964) 227 Cal.App.2d 1, 4 [38 Cal.Rptr. 357] [provision of divorce decree established trust that provided "corpus of the trust estate and all accumulations and additions thereto in equal shares to said minor children"].) The fact that an "amendment" to a document is not commonly referred to as an "addition" to the document supports our interpretation of section 82, subdivision (a)(1). Finally, James II cites no legislative history or authority to support his suggestion that the Legislature intended that the term "additions" in section 82, subdivision (a)(1) mean "amendments." Thus, section 82, subdivision (a)(1) does not support James II's contention that the no contest clause in the Trust applies to Cynthia's challenge to the First Amendment.

James II goes on to cite a number of cases in which the courts broadly interpreted no contest clauses to apply to actions that would thwart a testator's testamentary intent. These cases are all inapposite, because in none of them did the court consider whether a no contest clause met the "expressly identified" requirement of section 21305, subdivision (a).[11]

---

[10] James II argues that the no contest clause applies to a contest of any provisions of the Trust, and that because an amendment is a provision of the Trust, the no contest clause applied to any future amendments. The *Rossi* court rejected this same argument. (*Rossi, supra*, 138 Cal.App.4th at p. 1340.) The fact that an amendment to a trust is not a provision of the trust at the time of adoption of the trust's no contest clause, supports the *Rossi* court's conclusion on this point. We conclude that it is reasonable to interpret the reference to the " 'trust or any of its provisions' " in a no contest clause to refer to provisions of the trust in existence at the time the no contest clause is executed. (*Rossi, supra*, 138 Cal.App.4th at p. 1329.)

[11] James II states in his appellate brief, "Several cases, including a recent *unpublished decision* of this Court, support the notion that even if an amendment to a trust does not include a no contest clause, the no contest clause of the original trust applies." (Italics added.) An identical sentence appeared in James II's brief filed in the trial court. Thus, while James II may have intended to refer to an unpublished decision of the *trial* court rather than *this* court, his inclusion of this sentence in his appellate brief was entirely improper. (See Cal. Rules of Court, rule 8.1115(a) ["[A]n opinion of a California Court of Appeal or superior court appellate division that is not certified for publication or ordered published must not be cited or relied on

James II also argues that the trial court properly determined that the ratification language in the First Amendment distinguishes it from the amendment at issue in *Rossi*. This is, in fact, the sole basis on which *Rossi* might arguably be distinguished from material facts of this case. However, this rationale is no longer valid in the wake of *Perrin*.[12]

The First Amendment provides that James "ratifies all of the terms and conditions of the *Survivor's Trust*." (Italics added.) We assume, strictly for the sake of argument, that James thereby ratified the Trust's *no contest clause*, notwithstanding the fact that the no contest clause was not contained within the provision of the Trust that created the Survivor's Trust. (Cf. *McIndoe v. Olivos* (2005) 132 Cal.App.4th 483, 487 [33 Cal.Rptr.3d 689] [holding that no contest clause contained in general provisions section of trust document applied to survivor's trust created by trust document].) Even if this is so, the *Perrin* court held that the fact that two amendments "confirm[ed] and ratif[ied]" the trust, was not sufficient to render the no contest clause of the trust applicable to a challenge to those amendments. (*Perrin, supra,* 164 Cal.App.4th at p. 1243.) For the reasons stated in *Perrin*, and in particular, the fact that the Trust was executed after section 21305, subdivision (a)(3) was enacted yet made no mention of amendments, the ratification language contained in the First Amendment does not render the no contest clause in the Trust applicable to Cynthia's challenge to the First Amendment.

James II attempts to distinguish *Perrin* on the ground that "the no contest clause in *Perrin* was not as broad as that in this case." James II contends: "In *Perrin*, the clause in that trust provided in part that 'if any beneficiary hereunder . . . directly or indirectly contests, disputes, or calls into question, before any tribunal, the validity of this Agreement or of said Will or the validity of any provisions of this Agreement or of said Will . . . ' that person will be disinherited. By contrast the language in this action prohibits any proceeding that seeks to set aside any manner any of the provisions of the [Trust]."

We do not find this argument to be persuasive. As is indicated by James II's paraphrasing of the no contest clauses in *Perrin* and in this case, both clauses generally apply by their terms to any action that seeks to challenge the provisions of the trust at issue. (See pts. II.A. & III.B.1.b., *ante* [quoting

---

by a court or a party in any other action."].) Although we deny Cynthia's request to impose a monetary sanction on James II's attorney for his violation of our rules of court, we note our disapproval of the violation.

[12] The Court of Appeal decided *Perrin, supra,* 164 Cal.App.4th 1239 after the trial court issued its order in this case.

the respective no contest clauses in this case and in *Perrin* in their entirety].) In fact, the no contest clause at issue in *Perrin* was arguably broader than the one at issue in this case because the no contest clause in *Perrin* applied to claims to ownership of " 'properties of this trust' " (*Perrin, supra,* 164 Cal.App.4th at p. 1249), while the no contest clause in this case does not contain similar language.

Finally, James II argues that to fail to interpret the Trust's no contest clause as applying to the First Amendment would be to ignore the "Trustor's intent adding the no contest clause to the [Trust]," and would "unravel the Trustor's estate plan by destroying the [First Amendments] in [its] entirety." To begin with, we note that James II is mistaken in suggesting that a single trustor adopted both the no contest clause *and* the estate plan provided in the First Amendment. *Trustors* James and Patricia adopted the no contest clause at a time when the First Amendment did not exist. It was trustor James, only, who adopted the amendment, after Patricia's death.

■ In any event, as the court in *Rossi* made clear,[13] whether a no contest clause meets the specificity requirements of section 21305, subdivision (a)(3) is not dependent upon the trustor's intent. (*Rossi, supra,* 138 Cal.App.4th at p. 1340 ["we are concerned here with the intent of the Legislature, not [the trustor's] intent"].) In other words, whether an instrument's no contest clause "expressly identifie[s]" (§ 21305, subd. (a)(3)) another instrument as within its scope is an objective inquiry, not a subjective one.

Even assuming that James and Patricia's intent with respect to the scope of the no contest clause in the Trust was determinative, " '[w]e cannot say the [Trustors] *"unequivocally"* expressed [their] intent to apply the no contest clause in this case to [an] action[] regarding the [First Amendment]. [Citations.]' " (*Perrin, supra,* 164 Cal.App.4th at p. 1249.) The language of the Trust's no contest clause does not permit us to conclude that both James and Patricia unequivocally expressed their intent that a beneficiary could challenge any future amendments to their estate plan, only upon pain of forfeiture.[14]

---

[13] The Court of Appeal decided *Rossi* in April 2006; James and Patricia executed the Trust in September 2006.

[14] In other words, we cannot say that both Patricia and James agreed that the surviving trustor would be able to substantially amend the Trust after the death of one of the trustors, and that the Trust's beneficiaries would be unable to challenge any such amendment without triggering the no contest clause.

## IV.

## DISPOSITION

The December 13, 2007 order is reversed insofar as it concludes that Cynthia's proposed challenge to the First Amendment would violate the Trust's no contest clause. James II is to bear costs on appeal.

Huffman, Acting P. J., and McIntyre, J., concurred.