Filed 8/7/15  Holland v. Cal. State Personnel Bd. CA1/2
## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| CHERI HOLLAND,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>CALIFORNIA STATE PERSONNEL BOARD,<br><br>        Defendant;<br><br><br>CALIFORNIA DEPARTMENT OF EDUCATION,<br><br>        Real Party in Interest and Appellant. | A138206<br><br>(Alameda County<br>Super. Ct. No. HG12622519) |

Appellant California Department of Education dismissed respondent Cheri Holland, a business manager employed at the California School for the Blind, after an audit disclosed that Holland's then husband used a Costco cash card procured by Holland with school funds to purchase items for his personal use.  After Holland appealed to the State Personnel Board, an administrative law judge recommended sustaining charges of incompetency, inefficiency, inexcusable neglect of duty, and other failure of good behavior, but proposed a reduction in the penalty to a six-month suspension without pay and a demotion.  The State Personnel Board upheld the administrative law judge's findings on the charges, but rejected the proposed suspension and demotion, instead reinstating dismissal as the appropriate penalty.

1

Holland petitioned for a writ of administrative mandamus. The trial court concluded that the sustained charges were supported by substantial evidence but that dismissal was clearly excessive and an abuse of the State Personnel Board's discretion. The court ordered the State Personnel Board to set aside the dismissal and reconsider the penalty.

The California Department of Education appeals, challenging the trial court's conclusion that the State Personnel Board abused its discretion in ordering Holland's dismissal. We conclude that the State Personnel Board did not abuse its discretion in dismissing Holland. We thus reverse.

## FACTUAL BACKGROUND

In 1980, Holland began working for the State of California when she was hired by Agnews State Hospital. In 2001, she was hired as a Business Manager I in the business support services unit at California School for the Blind (CSB). Holland's duties included procurement; contracting; inventory control; overseeing janitorial, maintenance, and security services; formulating business management policies; directing and coordinating business services functions, including budgets and accounting; and ensuring that CSB operations functioned at maximum levels of efficiency. She reported directly to CSB site superintendent Stuart Wittenstein, who relied on Holland to function as the school's chief financial officer.

As part of her duties, Holland was responsible for timely processing, tracking, and reconciling donations to and expenditures from CSB's Endowment Trust Fund (ETF). The ETF was funded by private donations, and the interest earned on the fund was used to enhance the lives and educational development of CSB students. Every year, the interest generated by the ETF was disbursed to CSB, and Holland would create a budget narrative for the disbursement and send it to the California Department of Education's (CDE) State Special Schools and Services Division (SSSSD) for approval.

In 2005, CSB began using ETF interest to purchases gift cards and cash cards to fund activities for CSB students. As pertinent here, on August 31, 2007, Holland purchased five $1,000 Costco cash cards with her personal credit card, for which she was

reimbursed from ETF funds. The cards were to be used to purchase food for staff meetings and training, community outreach activities, and student recreational activities. Holland initially kept them in the business office safe, but at some point prior to August 2008, she moved them to a desk drawer in her office. She created a cover sheet to note who was using the cards, but she failed to consistently keep track of balances, purchase receipts, which employees used the cards, or the purposes of purchases.

On August 31, 2008, Holland purchased 11 Costco cards, again in the amount of $1,000 each. Her request for reimbursement came to the attention of the SSSSD director who, concerned about the risks of using cash cards, requested an internal audit.

According to Holland, the weekend prior to April 7, 2009 (when she was to be interviewed by the auditor), Holland collected the Costco cards in her office and had her office technician gather the cards in the general safe. She then took them home to organize and reconcile the balances.

On April 7, 2009, CDE auditor Luz Montenegro met with Holland at CSB. When Montenegro asked Holland for the 16 Costco cards, Holland retrieved the 11 cards purchased on August 31, 2008—10 from a safe in her office and one from the general safe—repeatedly stating that those were all of the Costco cards. When Montenegro asked specifically for the other five cards, Holland responded that she had forgotten them at home and was "hoping [Montenegro] was not going to ask [her] about that."

The following week, CDE audit manager Ron Ikemoto requested that Holland provide receipts for all purchases made with the five cards. She produced receipts for three cards, incomplete records for a fourth, and no records for the fifth. At Ikemoto's request, Holland provided him with her Costco membership information so he could obtain the information directly from Costco.

On April 30, 2009, information received from Costco revealed that, in January and February 2008, Holland's husband used one of the Costco cash cards to buy household

3

goods and gasoline totaling $821.23—items that were clearly not for the benefit of the CSB students.[1]

After the on-site portion of the audit was completed, Holland informed Wittenstein that the audit would reveal that her husband had used one of the Costco cards, claiming she did not know how he had obtained it. Wittenstein told Holland to wait until the outcome of the audit.

In November 2009, Wittenstein received the draft audit report and asked Holland for help in responding. Holland offered to repay the money her husband spent.

The CDE terminated Holland's employment in June 2010, after which she filed for unemployment insurance. At the hearing on her claim, Holland testified she did not recall bringing the card home, but said that her office technician would occasionally place the cards in her take-home folder, even though she had been instructed not to do so. Holland speculated that the card might have fallen off a table and onto the floor at home, where her husband picked it up. Holland's husband claimed he did not know how he got the card, but he did not recall Holland ever giving it to him, and he would not have obtained it by going through her work papers. Although Holland knew of her husband's use of the card by April 2009 at the latest, she claimed she did not discuss it with him until after she was dismissed, over one year later.[2]

CSB and the SSSSD had no written policies or guidelines for the administration, control, and permissible use of ETF disbursements. Holland did not maintain records or logs of ETF donations and admitted that having the cash cards at home was not properly safeguarding the cards. She also claimed to be unaware that deposits of receipts were to be made within 10 working days, having submitted donations for deposit more than 10 days after receipt on six occasions between 2007 and 2009.

---

[1] Per Costco's records, the card in question had a zero balance, but $178.77 was unaccounted for. The CDE would not concede that neither Holland nor her husband spent the remaining $178.77.

[2] Holland and her husband separated in mid-2008.

PROCEDURAL BACKGROUND

**Holland's Termination**

By notice of adverse action dated June 1, 2010, the CDE notified Holland that, effective June 18, she was dismissed from her employment for incompetence, inefficiency, inexcusable neglect of duty, dishonesty, discourteous treatment of others, misuse of state property, and other failure of good behavior causing discredit to the CDE or her employment. (See Gov. Code, § 19572, subds. (b), (c), (d), (f), (m), (p) & (t).) An amended notice added allegations regarding an incident that occurred on November 4, 2009.[3]

**Holland's Appeal to the State Personnel Board, and the Administrative Law Judge's Proposed Decision Reducing the Penalty to Suspension and Demotion**

Holland appealed her dismissal to the State Personnel Board (SPB). Following a three-day hearing before an administrative law judge (ALJ) and the submission of written closing arguments, the ALJ issued a proposed decision sustaining the charges of inexcusable neglect of duty, incompetence, inefficiency, and other failure of good behavior, and dismissing the remaining charges.[4]

As to inexcusable neglect of duty, the ALJ found: "[T]he evidence established, and Appellant admitted, that she had poor recordkeeping of the cash cards, did not have receipts of purchases, and did not keep track of the card balances or who used the cards. Appellant also admitted that having the cash cards at her home was not properly safeguarding the cards. Furthermore, Appellant's lack of recordkeeping resulted in her

---

[3] The November 4 incident involved Holland's request of a subordinate staff member that he take a vacation day to accompany her on a business trip to Sacramento, which left CSB without maintenance coverage or anyone to respond to an alarm malfunction. As this allegation was not sustained, we omit further discussion about it.

[4] In dismissing the dishonesty charge, the ALJ found that "the evidence did not establish that Appellant intentionally gave the cash card to her husband to make personal purchases." Because the SPB adopted the ALJ's findings regarding Holland's violations and because the CDE did not challenge the dismissal of the dishonesty charge in the trial court, we are constrained by this finding, even if the record were to lead us to a different conclusion.

husband making personal purchases with state monies. If not for Appellant's lack of recordkeeping, she might have discovered the discrepancies soon after her husband made the purchases in February 2008, instead of after the audit in April 2009. (See *Arnold & Leal* (SPB Dec. No. 96-17.) [SPB considers the seriousness of the harm when determining whether negligence rises to the level of gross negligence].) [¶] In addition, the evidence established that Appellant took more than ten days to submit donations to be deposited in violation of the [State Administrative Manual]. Appellant's admission that she was unaware of the requirement does not negate her responsibility to comply. She should have been familiar with [State Administrative Manual] requirements as part of her job. [¶] . . . [¶] Looking at the totality of the circumstances, Appellant's conduct, even if not intentional, increased her negligent behavior to the level of gross negligence."

The incompetency charge was supported by the ALJ's finding that "[t]he evidence established that Appellant failed to perform basic bookkeeping and safeguarding of CSB's assets. Thus, Appellant did not adequately perform her duties . . . ."

As to the inefficiency charge, the ALJ found: "The evidence established that Appellant failed to meet her duties, as outlined in her duty statement, to direct and coordinate the accounting of the cash cards and all business services related functions constituting inefficiency under Government Code section 19572, subdivision (c)."

Finally, the ALJ found failure of good behavior based on Holland's "failure to exercise good business skills and her negligent practices [which] resulted in her husband making personal purchases with state funds that remained undiscovered for more than a year. Appellant's actions were more than mere misconduct and reflected poorly on, and caused discredit to, Appellant and [CDE]."

Turning to the penalty, the ALJ found as follows: "As a Business Manager I responsible for all the business services related functions of CSB, Appellant is a trustee of public funds. Appellant failed to act as a reasonable trustee of public funds when her negligent business practices resulted in her husband spending public funds that remained undetected for over a year, and only after an audit. Moreover, Appellant never attempted to ascertain from her husband what happened to the cash card until after she was

6

terminated, even though she was informed that he had used it the year prior. [¶] In mitigation, Appellant had no prior adverse action, and approximately 30 years in state service. At the hearing, Appellant took responsibility for some of the shortcomings found in the audit. She also took responsibility for inadvertently taking the cash card home and unintentionally allowing her husband to use the card. Also, Appellant did offer to repay the funds. CSB did not have any policies to provide guidance to her on the allowable uses of ETF monies. Further, [CDE] did not immediately remove Appellant from her position after discovery of her husband's use of the cash card. It is unlikely that Appellant will make this kind of mistake again because CSB and SSSSD have implemented internal controls subsequent to the audit."

The ALJ concluded that although "a significant penalty [was] required to reinforce the serious nature of Appellant's actions . . . dismissal [was] excessive." She recommended modification of the penalty to a six-month suspension without pay and a demotion to the position of Business Services Assistant.

**The SPB's Rejection of the ALJ's Proposed Penalty Reduction**

On April 6, 2011, the SPB rejected the ALJ's proposed decision to the extent it modified the penalty, ordering that the SPB would decide the case itself. The parties submitted briefs on the penalty issue, and the SPB heard argument.

On October 4, 2011, the SPB "adopt[ed] the findings and conclusions of the [ALJ] except with respect to the ALJ's modification of penalty from Dismissal to a Six Month Suspension Without Pay and Demotion to the position of Business Services Assistant," finding that the modification was "too lenient and [did] not adequately account for the gravity of harm to the public service, the unique circumstances surrounding the misconduct and the likelihood of recurrence." Instead, the SPB sustained Holland's dismissal as the appropriate remedy.

In support of its determination, the SPB reasoned:

"2.     Appellant held the position of Business Manager I, a managerial position with responsibility over, among other things, budgets, accountings, and business-service

7

related needs of the California School for the Blind. This is a position of trust requiring the handling of state funds and finances.

"3.     Appellant makes much ado about the haphazard or nonexistent policy within the Department or office on how to handle, secure and/or account for Costco cash cards that are purchased with state funds and are designated for the school's use. As the Business Manager, Appellant should have undertaken the task of, at a minimum, developing protocols on how to best safeguard the cash cards. Even absent [any such] Department-generated protocol, Appellant's mishandling or grossly negligent handling of the cash cards is inexcusable.

"4.     The harm to the public service is not merely imagined in this instance. A cash card with a value of $1,000 was spent by Appellant's husband for his personal enjoyment. An offer to repay the sum does not, in this instance, alleviate the harm to the public service.

"5.     Lastly, Appellant asserts that she understands the seriousness of the situation and now with internal control measures having been introduced by her employer, the likelihood of recurrence is minimal. The Board disagrees. Material to the recurrence issue is Appellant's continued argument and effort at displacing blame on the absence of control measures and the undeniable fact that Appellant did not confront her husband on the use of the card until nearly one year after she was aware of the improper usage. While extended tenure as a civil servant may be a mitigating consideration in determining appropriate discipline, it does not qualify here. Appellant's 30-year tenure as a state employee, with the last nine years as a Business Manager, actually serves as a basis to find that Appellant should have known better. Notwithstanding her cumulative experience, Appellant attempted to deflect responsibility to the absence of internal control measures or clear office guidelines on handling cash cards."

Holland sought rehearing of the SPB's decision, which the SPB denied.

**Holland's Petition for Writ of Administrative Mandamus**

On March 22, 2012, Holland petitioned for a writ of administrative mandamus in the Superior Court for the County of Alameda. She contended the SPB's findings were

8

unsupported by substantial evidence and the penalty was excessive and an abuse of discretion.

On December 21, 2012, following briefing and argument, the trial court issued its proposed statement of decision. Correctly noting it was to review the SPB's findings for substantial evidence, the court concluded that the findings of incompetence, inefficiency, inexcusable neglect of duty, and other failure of good behavior were all supported by substantial evidence.

Turning to the penalty, the trial court noted that the penalty rested within the SPB's sound discretion and would not be disturbed absent an abuse of that discretion. Against this standard of review, however, the court concluded that the SPB's "decision to dismiss [Holland] was clearly excessive and an abuse of discretion." The court reasoned as follows:

"The [SPB] adopted the ALJ's findings and conclusions except as to the ALJ's modification of penalty from [Holland's] dismissal to a 6-month suspension without pay and demotion to the position of Business Services Assistant. The [SPB] found the penalty modification too lenient and that it did not adequately account for the gravity of the harm to the public service, the unique circumstances surrounding the misconduct and the likelihood of recurrence. The [SPB] disagreed that the likelihood of recurrence was minimal because it found that [Holland] continued to displace blame on CSB's lack of procedures and guidelines, and also [Holland] failed to confront her husband after she became aware that he used the card.

"The court acknowledges that there was some harm to the public in the misuse of this public asset. However, this one incident involving a $1,000 Costco cash card is the same incident that forms the basis for all the causes for discipline, i.e. incompetency, inefficiency, inexcusable neglect of duty and other failure [of] good behavior. Further, no evidence was presented that [Holland] intentionally gave the card to her husband or intentionally mishandled this public asset. Therefore, while the court does not excuse [Holland's] actions here, it finds that the penalty of dismissal based on this one incident involving a $1,000 cash card, is clearly excessive.

9

"The circumstances surrounding the misconduct also support that dismissal is too harsh. [Holland] has approximately 30 years of service, including 9 years as a Business Manager, and no prior adverse action taken against her. Moreover, CSB and SSSSD had no written policies or guidelines for ETF disbursements, and CSB had no procedures regarding the usage or tracking of cash cards. [SPB] makes too light of the fact that there were no guidelines and procedures in place for the handling of these cash cards. While [Holland] should have undertaken guidelines and protocols for how best to safeguard the cash cards, it seems excessive to place the blame solely on [Holland] for a pattern and practice that existed for at least the 9 years that [Holland] worked for CSB, with her supervisor's knowledge and without any apparent complaints, up until the audit.

"Also, contrary to [SPB's] contention, the likelihood of recurrence appears minimal. The court takes issue with [SPB's] finding that [Holland] failed to accept responsibility and therefore that the chance of recurrence was likely. When [Holland] discovered the truth about what happened to the $1,000 cash card, she immediately reported it to her supervisor, Mr. Wittenstein, who decided not to take any action at that time. [Holland] also offered to repay the funds.

"Additionally, CSB and SSSSD have now implemented internal controls subsequent to the audit regarding these funds. [SPB] fails to set forth an adequate explanation for why such controls would not be adequate to prevent the likelihood of recurrence. If [Holland] were demoted to a Business Services Assistant, the chance of recurrence would be even slimmer. This same situation also seems highly unlikely to occur again too, since [Holland] is divorcing her husband.

"Finally, to the extent that the decision to terminate is based on [Holland's] failure to comply with the [State Administrative Manual], there does not appear to be any evidence to support any public harm as a result, or that there is a likelihood of recurrence now that Petitioner is aware of this requirement. Although not excusing [Holland's] failure to comply with the 10-day processing requirement, the court notes that even Dr. Wittenstein was not aware of this requirement until the audit. [Citation.] [Holland's]

demotion, as proposed by the ALJ, would seem to be an additional safeguard against recurrence as well.

"As such, when considering all of the relevant factors in light of the overriding concern for averting harm to the public service, the court finds that the [SPB] abused its discretion by ordering the most severe punitive action possible for [Holland's] misconduct. The court therefore ORDERS [SPB] to set aside its decision dismissing [Holland], and REMANDS this matter back to [SPB] to reconsider the case in light of this court's opinion and judgment and to take such further action as [is] specially enjoined upon it by law."

The court denied Holland's request for attorney fees, stating, "Even though the court finds that the discipline imposed by the [SPB] was excessive, the court does not find that this decision was arbitrary or capricious, particularly given that the court agrees with the [SPB's] findings of fact."

Neither party objected to the proposed statement of decision, and, on February 1, 2013, the court entered judgment granting Holland's petition. It subsequently issued a peremptory writ directing the SPB to set aside Holland's dismissal and reconsider the case in light of the court's decision.

On March 20, 2013, the CDE filed a timely notice of appeal.

## DISCUSSION

### Holland Cannot Challenge the Sustained Charges

We begin with an observation about what is *not* before us in this appeal. As detailed above, the ALJ and the SPB sustained charges of incompetency, inefficiency, inexcusable neglect of duty, and failure to demonstrate good behavior. The trial court concluded those findings were supported by substantial evidence. Holland spends a substantial portion of her respondent's brief arguing that the SPB abused its discretion when it adopted the ALJ's findings regarding her conduct because the findings were unsupported by substantial evidence. If Holland wished to challenge those findings, she could have appealed from that portion of the judgment. (Code Civ. Proc., § 904.1, subd. (a)(1).) Alternatively, she could have filed a cross-appeal to the appeal filed by the CDE.

11

(Cal. Rules of Court, rule 8.108(g).)  She did neither.  As such, Holland cannot urge error on appeal.  (*California State Employees' Assn. v. State Personnel Bd.* (1986) 178 Cal.App.3d 372, 382, fn. 7 ["[I]t is the general rule that a respondent who has not appealed from the judgment may not urge error on appeal."]; see also *Townsend v. Townsend* (2009) 171 Cal.App.4th 389, 398 [respondent who did not file an appeal from the trial court's order forfeited his right to seek reversal of a portion of the order]; *Estate of Powell* (2000) 83 Cal.App.4th 1434, 1439 [respondent who has not filed an appeal "cannot seek . . . affirmative relief" and may not raise claim of error other than to seek affirmance of trial court ruling].)[5]

As it stands, only the CDE appealed,[6] and it challenges only the penalty portion of the judgment.  We thus turn to the applicable standard of review and the merits of the CDE's contention that the SPB did not abuse its discretion in dismissing Holland.

### Applicable Law and Standard of Review

Pursuant to the procedures for imposing discipline on a state employee, a state agency—here the CDE—has the initial responsibility for determining whether there is cause for discipline of its employee and, if so, what discipline to impose.  (Gov. Code, § 19574.)  The employee has the right to a review by the SPB of any disciplinary action taken by the employer.  (*State Personnel Bd. v. Department of Personnel Admin.* (2005) 37 Cal.4th 512, 522 (*State Personnel Bd.*); *Boren v. State Personnel Board* (1951) 37 Cal.2d 634, 638.)

---

[5] Code of Civil Procedure section 906 creates an exception allowing a respondent to request that the reviewing court review the trial court's order or rulings "for the purpose of determining whether or not the appellant was prejudiced by the error or errors upon which he relies for reversal or modification of the judgment from which the appeal is taken."  (See *California State Employees' Assn. v. State Personnel Bd., supra,* 178 Cal.App.3d 372, 382, fn. 7 ["The purpose of the statutory exception is to allow a respondent to assert a legal theory which may result in affirmance of the judgment."].)  This exception does not apply here, as Holland seemingly aims to overturn the findings supporting the charges against her.

[6] The court granted the SPB leave to file a brief on the narrow issue of the scope of judicial review of the SPB's penalty determination.

On review of a disciplinary action, the SPB acts like a trial court in ordinary judicial proceedings, making factual findings and exercising its discretion. (*Department of Parks & Recreation v. State Personnel Bd.* (1991) 233 Cal.App.3d 813, 823 (*Department of Parks & Rec.*); Cal. Const., art. VII, §§ 2, 3.) It may appoint an ALJ to conduct an evidentiary hearing and issue a proposed decision, which the SPB may adopt or reject in whole or in part. (Gov. Code, § 19582; *California Youth Authority v. State Personnel Bd.* (2002) 104 Cal.App.4th 575, 583 (*California Youth Authority*).) The SPB may overturn the employer's imposition of discipline if: (1) the evidence does not establish the fact of the alleged cause for discipline; (2) the employee was justified; or (3) cause for discipline is shown but is insufficient to support the level of punitive action imposed. (*Department of Parks & Rec., supra,* at p. 827.)

An employee may challenge the SPB's decision by filing a petition for writ of administrative mandate in the superior court. (Code Civ. Proc., § 1094.5; *State Personnel Bd., supra,* 37 Cal.4th at p. 522.) "Because the [SPB] derives its adjudicatory authority from the state Constitution rather than from a legislative enactment, a superior court considering a petition for administrative mandate must defer to the [SPB's] factual findings if they are supported by substantial evidence. [Citation.]" (*Ibid.*) The standard of review is satisfied if the "record discloses substantial evidence (reasonable, credible and of solid value) such that a reasonable trier of fact could have found as it did." (*Parker v. State Personnel Bd.* (1981) 120 Cal.App.3d 84, 87.) In so doing, the trial court resolves all conflicts in the evidence and makes all reasonable inferences in favor of the SPB's decision. (*California Youth Authority, supra,* 104 Cal.App.4th at pp. 584–586.)

The trial court must uphold the SPB's decision regarding the penalty imposed unless the penalty is an abuse of discretion. (*Department of Parks & Rec., supra,* 233 Cal.App.3d at pp. 831–832; *Skelly v. State Personnel Bd.* (1975) 15 Cal.3d 194, 217–218 (*Skelly*) [SPB's determination as to employee's penalty will not be disturbed absent a manifest abuse of discretion, which occurs when the action exceeds the bounds of reason]; *Paulino v. Civil Service Com.* (1985) 175 Cal.App.3d 962, 970 (*Paulino*) [discretion abused where penalty imposed exceeds the bounds of reason].) In considering

13

whether an abuse of discretion occurred, the overriding consideration "is the extent to which the employee's conduct resulted in, or if repeated is likely to result in, '[h]arm to the public service.' [Citations.] Other relevant factors include the circumstances surrounding the misconduct and the likelihood of its recurrence. [Citation.]" (*Skelly, supra,* 15 Cal.3d at p. 218; accord, *Paulino, supra,* 175 Cal.App.3d at p. 970; *Warren v. State Personnel Bd.* (1979) 94 Cal.App.3d 95, 107–108.)

On appeal from the trial court's judgment, we review the SPB's decision, not the trial court's decision. We apply the same standards of review the trial court applied. (*California Youth Authority, supra,* 104 Cal.App.4th at p. 584.) We may not interfere with the SPB's imposition of a penalty merely because, in our evaluation of the circumstances, the penalty of dismissal may appear too harsh. (*Paulino, supra,* 175 Cal.App.3d at pp. 970–971.) " '[A]n appellate court is no more free than a trial court to substitute its discretion for that of the administrative agency as to the degree of punishment imposed.' " (*Department of Parks & Rec., supra,* 233 Cal.App.3d at p. 832, quoting *Caveness v. State Personnel Bd.* (1980) 113 Cal.App.3d 617, 631.)

**The SPB Did Not Abuse Its Discretion in Dismissing Holland**

As noted, we must uphold the SPB's dismissal of Holland absent an abuse of discretion. (*Skelly, supra,* 15 Cal.3d at pp. 217–218; *California Youth Authority, supra,* 104 Cal.App.4th at p. 584; *Department of Parks & Rec., supra,* 233 Cal.App.3d at pp. 831–832.) As also noted, the overriding consideration is whether Holland's conduct resulted in, or if repeated is likely to result in, harm to the public service. (*Skelly, supra,* 15 Cal.3d at p. 218.) The record here demonstrates that Holland's conduct resulted in significant harm to the public service.

In her capacity of Business Manager I, Holland's responsibilities included the safekeeping of public monies. Benefactors made donations to CSB's ETF for the purpose of enriching the lives of the school's students. Holland was entrusted with safeguarding the interest earned on those donations, as well as the assets purchased with that interest, including Costco cash cards. However, rather than properly overseeing those cash cards—a task that required rudimentary skills at best—Holland mishandled

14

the cards in a fashion that allowed her husband to use a $1,000 card for his own personal benefit. In short, due to nothing but Holland's incompetence, $1,000 of public funds was spent for the benefit of a private individual. This was concrete, significant harm to the public service, not merely "some harm," as the trial court minimized it. In short, it was conduct that undermined public trust in the CDE and caused discredit to Holland's employer.

The trial court believed it excessive to place sole blame on Holland for the loss of the card, citing the lack of guidelines and procedures for the handling of the cash cards that existed during Holland's tenure at CSB. The court criticized the SPB for making "too light of the fact that there were no guidelines and procedures in place for the handling of these cash cards." But complicated "guidelines and protocols" were not necessary to keep the cards out of the hands of an unauthorized user. As the business manager on whom Wittenstein relied to function as the chief financial officer, Holland should have developed even the simplest of systems to keep the cards under her control. This, she failed to do.

In concluding that the SPB's penalty was excessive, the trial court focused much attention on the likelihood of Holland repeating her conduct, finding the likelihood to be "minimal": "CSB and SSSSD have now implemented internal controls subsequent to the audit regarding these funds. [SPB] fails to set forth an adequate explanation for why such controls would not be adequate to prevent the likelihood of recurrence. If Petitioner were demoted to a Business Services Assistant, the chance of recurrence would be even slimmer. This same situation also seems highly unlikely to occur again too, since Petitioner is divorcing her husband." But the record supports the SPB's position that there is a risk of recurrence, given that Holland proved herself to lack candor and professionalism. During the audit, Holland was not forthcoming about the cash cards, initially insisting that the 11 cards she produced to auditor Montenegro were all of the cards. When directly asked about the five remaining cards—which included the one spent by her husband—Holland responded she had forgotten them at home (this, despite knowing that she would be meeting with the auditor) and hoped she would not be asked

15

about them.  In fact, only four of the five cards were at home, and Holland either knew the fifth one had been lost or stolen, believed she had misplaced the fifth card and made no attempt to locate it, or was unaware it was even missing.

Further, it was discovered in April 2009 that Holland's husband had used the card, but not until after her termination in June 2010—more than a year after the misuse was discovered—did Holland confront him about it or attempt to explain how he came into possession of the card.  And, throughout the entire process, Holland did not take responsibility for the situation, instead placing blame on the absence of control measures. All told, Holland conducted herself in a fashion that lacked candor, integrity, and professionalism.  While there may now be controls in place to prevent a repeat of the type of incident that occurred as a result of Holland's incompetence, such controls cannot prevent further incidents arising out of Holland's lack of candor and integrity.

Turning to the last consideration—the circumstances surrounding the misconduct—we conclude the circumstances also supported dismissal as the proper penalty.  First, we again note Holland's lack of candor and failure to take responsibility for the misuse of the card.  Further, Holland functioned as CSB's chief financial officer, and despite nine years of experience in that position, she failed to take even rudimentary steps to prevent the loss.  And she directly benefited from the misuse of the card, as her then husband purchased household goods for their joint use.

Perhaps most telling that the SPB did not abuse its discretion in reinstating Holland's dismissal is that reasonable minds unquestionably differed on the appropriate penalty.  "The fact that reasonable minds may differ as to the propriety of the penalty imposed fortifies the conclusion that the administrative body acted within the area of its discretion." (*Flowers v. State Personnel Bd.* (1985) 174 Cal.App.3d 753, 761; accord, *Kazensky v. City of Merced* (1998) 65 Cal.App.4th 44, 54 ["In determining whether an agency abused its discretion in assessing a particular penalty, a court will look to 'whether reasonable minds may differ as to the propriety of a penalty imposed.' "]; *Bautista v. County of Los Angeles* (2010) 190 Cal.App.4th 869, 879 [" 'It is only in the exceptional case, when it is shown that reasonable minds cannot differ on the propriety of

16

the penalty, that an abuse of discretion is shown.' "]; *Paulino, supra,* 175 Cal.App.3d at p. 970 ["the fact reasonable minds may differ as to the propriety of the penalty supports a finding the Commission acted within its discretion."].) Here, the CDE and the SPB believed dismissal was warranted, while the ALJ and the trial court believed suspension and demotion to be adequate.

## DISPOSITION

The judgment of the superior court is reversed, and the cause is remanded to the trial court with directions to: (1) recall the writ of mandate; (2) set aside the order granting the petition; and (3) enter a new order denying the petition.

_____

Richman, Acting P.J.

We concur:

_____

Stewart, J.

_____

Miller, J.

17