[No. G038633. Fourth Dist., Div. Three. July 16, 2008.]

AUSTIN JISU PERRIN, a Minor, etc., et al., Plaintiffs and Appellants, v. SYLVIA LEE, as Trustee, etc., Defendant and Respondent.

**COUNSEL**

Law Office of Dirk Van Tatenhove and Dirk Van Tatenhove for Plaintiffs and Appellants.

Law Offices of Marc T. Eagan and Marc T. Eagan for Defendant and Respondent.

**OPINION**

**MOORE, Acting P. J.**—Julia C. Perrin (Trustor), the trustor under an inter vivos trust, amended her trust three times shortly before she died of breast cancer. At the time of her death, her two children, Austin Jisu Perrin and Elissa Ji-Yun Perrin, were only 11 and eight years old, respectively. Dirk Van Tatenhove (Guardian), as their guardian ad litem, filed a Probate Code

section 21320 "safe harbor" petition for a determination that his proposed petition to invalidate the second and third trust amendments would not be a contest within the meaning of the no contest clause of the trust. (All subsequent statutory references herein are to the Probate Code unless otherwise specifically stated.) He sought to ensure that by attacking the amendments he would not risk causing the forfeiture of the children's shares under their mother's trust, the size of which we do not know. The court ruled against the Guardian and he appeals.

The Guardian contends that the court misapplied section 21305, subdivision (a)(3) and failed to follow the principles of *Estate of Rossi* (2006) 138 Cal.App.4th 1325 [42 Cal.Rptr.3d 244] (*Rossi*). Relying on these authorities, the Guardian says that because the no contest clause in the trust did not specifically state that it applied to trust amendments, it did not; therefore, a challenge to a trust amendment does not trigger the no contest clause. We agree and reverse.

I

FACTS

A. *Dispositive Provisions of Trust and Amendments*

Pursuant to article 4 of the Julia C. Perrin Revocable Family Trust dated November 21, 2005 (the Trust), on the Trustor's death, $165,000 was to be allocated to a separate trust for the benefit of the Trustor's mother, Stella Chang. The remainder of the trust estate was to be allocated to the family trust for the benefit of the Trustor's children and their issue.

The Trustor executed three amendments to the Trust less than three weeks before she died. On February 22, 2006, she executed a first amendment to the Trust. That amendment deleted in its entirety the separate trust for the benefit of Stella Chang, thereby aggrandizing the size of the family trust for the benefit of the Trustor's minor children.

The following day, the Trustor executed a second amendment to the Trust. That amendment provided a $300,000 gift, free of trust, to Stella Chang and a $150,000 gift, free of trust, to Sylvia Lee, the Trustor's sister. It also provided that the family trust would consist of the balance of the trust estate. The amendment thus diminished the size of the family trust for the benefit of the Trustor's minor children.

Still making adjustments, only one day later, on February 24, 2006, the Trustor again amended the dispositive provisions of the Trust, so as to

provide $300,000 free of trust to Stella Chang, $150,000 free of trust to Sylvia Lee, $35,000 free of trust to Sun Ae Chang, also the Trustor's sister, and $15,000 free of trust to Yul Chang, the Trustor's brother. The third amendment, further diminishing the amount provided for the Trustor's children, stated that the family trust would consist of the balance of the trust estate.

The Trustor died on March 9, 2006.

### B. *No Contest Clause*

Section 9.5 of the Trust provides as follows: "The beneficial provisions of this Agreement and of the Grantor's Last Will[] and Testament, which make reference to this Agreement, are intended to be in lieu of any other right, claims or interests of whatsoever nature, whether statutory or otherwise . . . , which any beneficiary hereunder may have against or in the estate of the Grantor . . . or the properties in trust hereunder. Accordingly, if any beneficiary hereunder asserts any claim whatsoever . . . , statutory election, or other right or interest against or in a Grantor's estate, . . . Grantor's Will, any properties of this trust, other than pursuant to the express terms hereof or of said Will, or directly or indirectly contests, disputes, or calls into question, before any tribunal, the validity of this Agreement or of said Will or the validity of any provisions of this Agreement or of said Will, then (1) all costs related to any such assertion by such beneficiary shall be directly charged to and borne by such beneficiary's interests hereunder, and (2): [¶] (a) such beneficiary shall thereby absolutely forfeit any and all beneficial interests of whatsoever kind and nature which such beneficiary might otherwise have under this Agreement . . . ; [and] [¶] (b) all of the provisions of this Agreement, to the extent that they confer any benefits, powers, or rights whatsoever upon such claiming, electing, or contesting beneficiary, shall thereupon become absolutely void and revoked . . . ."

While neither the second nor the third amendment contains a no contest clause, each of these amendments contains the following language: "In all other respects, Grantor and Trustee hereby confirm and ratify said Trust Agreement as originally executed and as heretofore amended."

### C. *Section 21320 Petition and Ruling*

The Guardian filed a section 21320 petition for a determination that his proposed petition to invalidate the second and third amendments would not be a contest within the meaning of the no contest clause of the Trust. He asserted that the Trustor was not of sound mind when she executed the amendments, less than three weeks before she died and, further, that the

amendments were executed due to the undue influence of Stella Chang and Sylvia Lee. Sylvia Lee (Trustee), as the successor trustee of the Trust, opposed the petition.

The court ruled in favor of the Trustee, finding that the filing of the proposed petition would violate the no contest clause. In its minute order, the court explained "that by including the phrase . . . 'In all other respects, Grantor and Trustee hereby confirm and ratify said Trust Agreement as originally executed and as heretofore amended . . .' in each of the amendments the no contest clause in the trust [was] incorporated into the amendments." (Capitalization omitted.)

The Guardian moved for a new trial. The motion was denied. The Guardian appeals.

## II

## DISCUSSION

### A. *Safe Harbor Procedures*

 " 'An in terrorem or no contest clause in a will or trust instrument creates a condition upon gifts and dispositions provided there. [Citation.] In essence, a no contest clause conditions a beneficiary's right to take the share provided to that beneficiary under such an instrument upon the beneficiary's agreement to acquiesce to the terms of the instrument. [Citation.]' " (*Estate of Davies* (2005) 127 Cal.App.4th 1164, 1172–1173 [26 Cal.Rptr.3d 239].) " ' "Whether there has been a 'contest' within the meaning of a particular no-contest clause depends upon the circumstances of the particular case and the language used." [Citations.]' " (*Id.* at p. 1173.) "[S]ection 21320 provides a safe harbor for beneficiaries who seek a judicial determination whether a proposed legal challenge would be a contest, and that is the only issue to be decided when such an application is made. [Citation.] As a general rule, the decision about whether the beneficiary's proposed action would be a will contest may not involve a determination of the merits of the action itself, a rule that 'makes sense' because the summary safe harbor procedure could otherwise 'be used to allow the very form of challenge and protracted litigation the testator sought to prevent.' [Citation.]" (*Estate of Davies, supra,* 127 Cal.App.4th at p. 1173, fn. omitted.)

Section 21320, subdivision (a) provides: "If an instrument containing a no contest clause is or has become irrevocable, a beneficiary may apply to the court for a determination of whether a particular motion, petition, or other act by the beneficiary, including, but not limited to . . . an action pursuant to

Section 21305 . . . , would be a contest within the terms of the no contest clause."[1] Section 21320, subdivision (b) provides that "[a] no contest clause is not enforceable against a beneficiary to the extent an application under subdivision (a) is limited to the procedure and purpose described in subdivision (a)."

## B. *Analysis*

Here, the Guardian filed a section 21320, subdivision (a) petition, to which he attached a copy of a proposed challenge to the second and third amendments. As indicated at the outset, the Guardian asserted that the Trustor was not of sound mind when she executed the amendments and, further, that the amendments were executed due to the undue influence of Stella Chang and the Trustee. Section 21300, subdivision (b) specifically provides a challenge based on lack of capacity, duress or undue influence constitutes a direct contest to an instrument. However, section 21300 is not the only statute implicated in the analysis here. Rather, section 21305, subdivision (a) is key.

Section 21305, subdivision (a) provides: "For instruments executed on or after January 1, 2001, the following actions do not constitute a contest unless expressly identified in the no contest clause as a violation of the clause: [¶] (1) . . . [¶] (2) An action or proceeding to determine the character, title, or ownership of property. [¶] (3) A challenge to the validity of an instrument, contract, agreement, beneficiary designation, or other document, other than the instrument containing the no contest clause." The Guardian claims that subdivision (a)(3) is controlling in this matter. He explains that only the original Trust instrument contains a no contest clause and that he is presenting a "challenge to the validity of an instrument . . . other than the instrument containing the no contest clause." That is to say, he is challenging the validity of the two amendments in question, not the validity of the original Trust instrument.

The Guardian asserts that the trial court erred in concluding to the contrary, inasmuch as the proper application of section 21305, subdivision (a)(3) was resolved in his favor in *Rossi, supra*, 138 Cal.App.4th 1325. In *Rossi*, the trustor's son filed a safe harbor petition seeking to challenge a trust amendment on the ground of undue influence. Both the trust instrument and the amendment in question were executed after 2001. While the trust instrument

---

[1] Section 21300, subdivision (a) provides that the term " '[c]ontest' means any action identified in a 'no contest clause' as a violation of the clause. The term includes both direct and indirect contests." Section 21300, subdivision (b) provides that the term " '[d]irect contest' . . . means a pleading in a proceeding in any court alleging the invalidity of an instrument or one or more of its terms based on one or more of" certain grounds, including, but not limited to, lack of capacity, duress or undue influence.

contained a no contest clause, the trust amendment in question did not. (*Id.* at pp. 1328–1329.) The trial court held that because the no contest clause contained in the trust instrument did not provide that a challenge to a trust amendment would constitute a challenge to which the no contest clause of the trust instrument applied, the language of section 21305, subdivision (a)(3) controlled and the proposed challenge to the trust amendment would not constitute a contest to which the no contest provision of the trust instrument applied. (*Rossi, supra,* 138 Cal.App.4th at pp. 1328, 1335.) The appellate court affirmed. (*Id.* at p. 1341.)

The Guardian says that, inasmuch as the facts in *Rossi, supra,* 138 Cal.App.4th 1325 parallel the facts in the case before us, *Rossi* dictates the outcome of this case. The Trustee disagrees. She says that *Rossi* is distinguishable on its facts, because in that case the amendment in question did not contain the language at issue here, where the amendments state that they confirm and ratify the Trust. She explains that in this case the trial court properly held that the ratification language was meant to incorporate the Trust no contest clause into the second and third amendments.

In support of her position, the Trustee cites the Supreme Court decision in *Estate of Hite* (1909) 155 Cal. 436 [101 P. 443] (*Hite*). In *Hite,* a legatee whose legacy was diminished by a codicil to a will challenged that codicil. (*Id.* at pp. 437–438.) The will contained a no contest clause, but the codicil did not. (*Id.* at pp. 438, 447.) However, the codicil stated that it republished and reaffirmed the will. (*Id.* at p. 438.) The legatee argued that the no contest provision applied only to the will, not to the codicil, so that her contest of the codicil did not also constitute a contest of the will. (*Id.* at p. 446.) The court disagreed. It addressed "the purpose and intent of the testator" with respect to the will. (*Id.* at p. 447.) It stated: "So far as language goes, in both codicils he declares that he has reread, reconsidered, reordained, and republished, ratified and confirmed his will as of the dates respectively of the codicils. Thus the language of the codicils merely modifies the original will to the extent of the legacies, but expressly reaffirms it in every other particular. By such language the codicils become as much an integral part of the will as though their purport had been expressed in one of the original clauses thereof. Moreover, the purpose which the testator sought to subserve, as before discussed, forbids as well a contest of any part as of the whole. The same reasons moving him to forbid a contest in the one case, would operate in the other." (*Ibid.*) The court concluded that the legatee's position was untenable. (*Ibid.*)

In the case before us, the Trustee contends that the Supreme Court has already stated that when a testator, in his or her codicil, ratifies the provisions of a will containing a no contest clause, then a challenge to the codicil constitutes a challenge to the will. By analogy, when a trustor, in his or her

amendment, ratifies the provisions of a trust containing a no contest clause, then a challenge to the amendment constitutes a challenge to the trust, in violation of the no contest clause.

However, we observe that the language in the amendments before us was not as comprehensive as the language in the codicils before the Supreme Court in *Hite, supra*, 155 Cal. 436. More importantly, *Hite* was decided nearly a century before the statutory scheme in question was put in place. "In 2000, the Legislature amended the law governing no contest clauses, adding section 21305. (Stats. 2000, ch. 17, §§ 5, 6, 7.) The new section, effective January 1, 2001 [citation], listed for the first time actions that did not constitute contests 'unless expressly identified in the no contest clause as a violation of the clause.' [Citations.]" (*Rossi, supra*, 138 Cal.App.4th at pp. 1331–1332.) One such enumerated action is "[a] challenge to the validity of an instrument . . . or other document, other than the instrument containing the no contest clause." (§ 21305, subd. (a)(3).)

The term "instrument" is defined in section 45 as "a will, trust, deed, or other writing that designates a beneficiary or makes a donative transfer of property." In this case, the Trust and the amendments are separate instruments. As the court in *Rossi* stated, "The . . . trust and second amendment are separate instruments under section 45, and [the trustor] executed [each] instrument[] in 2003, long after the effective date of section 21305. He was therefore subject to its provisions." (*Rossi, supra*, 138 Cal.App.4th at p. 1340.)

As the *Rossi* court further explained: "[The second amendment] is separate from the instrument containing the no contest clause [and] it does not contain a no contest clause. And it is subject to challenge without violating the no contest clause of the instrument, because the instrument's no contest clause language failed to expressly identify the action as a violation." (*Rossi, supra*, 138 Cal.App.4th at p. 1338.) "[T]he Legislature[] inten[ded] that beginning on January 1, 2001, testators and settlors expressly identify in no contest clauses—whether they appear in wills, trusts, codicils or amendments—the actions that violate the no contest clauses." (*Id.* at p. 1339.)

In the case before us, we see that the Trust, executed in 2005, did not explicitly state that a contest to an amendment would violate the no contest clause of the Trust, such that the Guardian's challenge to the second and third amendments would cause the "disinheritance" of the Trustor's minor children. Inasmuch as the Trust omitted, despite the existence of section 21305, subdivision (a)(3), to specifically state that a challenge to an amendment would constitute a contest to which the no contest clause of the Trust would apply, we cannot construe the no contest clause as so applying.

In so concluding, we do not mean to say that a trust amendment could never be drafted in such a manner as to clearly incorporate a no contest clause contained in the original trust instrument into the amendment itself, thereby making the no contest clause applicable to a challenge to the amendment. However, in the case before us, the language of the amendments is not so drafted.

■ "Incorporation by reference occurs when 'one writing, which is a complete testamentary instrument in itself, must refer to another document in such a manner as to incorporate it.' [Citations.]" (*Estate of Twohig* (1986) 178 Cal.App.3d 555, 560 [223 Cal.Rptr. 352].) " '[T]here is incorporation by reference when one of the writings is a complete testamentary instrument, and refers to another document in a manner clearly designed to accomplish that purpose.' " (*Estate of McNamara* (1953) 119 Cal.App.2d 744, 747 [260 P.2d 182].) Here, we cannot say that the language of the amendments in question was "clearly designed" to accomplish the purpose of incorporation by reference.

Rather, the two amendments each state that they "confirm and ratify" the Trust. "To confirm is 'to make firm or certain; to . . . give new assurance of truth or certainty; to put past doubt,' [citation]." (*Biddle Boggs v. Merced M. Co.* (1859) 14 Cal. 279, 306; see also Black's Law Dict. (8th ed. 2004) p. 318, col. 1.) To ratify is "to approve and sanction" or "to confirm the truth of." (Webster's 3d New Internat. Dict. (1993) p. 1885.) The term has also been defined to mean: "To give approval. To confirm. To make a ratification." (Ballentine's Law Dict. (3d ed. 1969) p. 1056.)

The words used in the amendments in question plainly indicate the Trustor intended that, except to the extent particular terms of the Trust were specifically changed by the amendments, the remaining unchanged terms of the Trust would continue in full force and effect. Of course, the no contest clause set forth in section 9.5 of the Trust does not state that it is applicable to amendments. And, there is no indication in the language of the amendments that the Trustor meant to incorporate the section 9.5 no contest clause into the body of each amendment, so that the language regarding any challenge to "the validity of this Agreement" would mean a challenge to the validity of the amendment itself, rather than to the Trust as originally executed. The language of the amendments in this case shows that the Trustor intended to remove from doubt any question as to the effectiveness of the terms of the Trust that were not amended. It simply does not demonstrate an intent on the part of the Trustor to accomplish the incorporation by reference that the Trustee suggests.

■ " 'Although no contest clauses are valid and favored by the public policies of discouraging litigation and giving effect to the [trustor's] intent,

they are also disfavored by the policy against forfeitures and therefore are strictly construed and may not extend beyond what plainly was the [trustor's] intent. [Citations.] Section 21304 provides: "In determining the intent of the transferor, a no contest clause shall be strictly construed." ' " (*Meyer v. Meyer* (2008) 162 Cal.App.4th 983, 991 [76 Cal.Rptr.3d 546].) ■ " ' "Whether there has been a 'contest' within the meaning of a particular no-contest clause depends upon the circumstances of the particular case and the language used. [Citation.]" [Citation.]' [Citation.]" (*Ibid.*) In the case before us, "[w]e cannot say the [Trustor] '*unequivocally*' expressed her intent to apply the no contest clause in this case to actions regarding the [trust amendments]. [Citations.]" (*Id.* at p. 998.)

The Trustee argues that, even if the ratification language of the amendments is not construed to effectuate an incorporation by reference of the Trust no contest clause into the amendments, the language of the no contest clause is still broad enough to apply in the context of a challenge to an amendment. She emphasizes the portion of the no contest clause stating that "if any beneficiary hereunder asserts any claim whatsoever . . . , or . . . right or interest against or in . . . any properties of this trust . . ." the beneficiary shall forfeit his or her interest under the Trust. In other words, a challenge to an amendment is in essence the assertion of a claim to a larger share of the Trust property than would be made available to the challenger under the amendment. The challenge is, in that sense, the making of a claim to property of the Trust, in contravention of the terms of the no contest clause.

We are not persuaded. The broad language of the no contest clause notwithstanding, it remains the fact that the Guardian's proposed petition constitutes "[a] challenge to the validity of an instrument . . . other than the instrument containing the no contest clause," within the meaning of section 21305, subdivision (a)(3). It also remains the fact that the Trustor failed to address whether a challenge to an amendment would constitute a violation of the no contest clause of the Trust. Section 21305, subdivision (a)(3) cannot be ignored.

■ Perhaps the trial court in *Rossi* explained it best by stating that " '[a]t the end of it all, Section 21305[, subdivision] (a)(3) must be read for itself, without the preconceptions of a probate lawyer steeped in traditional practice. It requires an explicit mention of the amendment, or codicil, in the original no-contest clause or the amendment/codicil must contain a no-contest clause. As the Senate Judiciary Committee analysis proclaimed: "generic no contest clauses [are] obsolete." ' " (*Rossi, supra*, 138 Cal.App.4th at p. 1335.) Estate planning practitioners must draft each no contest clause with particularity, considering in each case which instruments are intended to be subject to the no contest clause, and specifically identifying each such instrument.

The court erred in finding that the Guardian's proposed petition would trigger the application of the no contest clause. We reverse.

## III

## DISPOSITION

The order is reversed. The Guardian shall recover his costs on appeal.

Fybel, J., and Ikola, J., concurred.