[No. G042684. Fourth Dist., Div. Three. Dec. 14, 2010.]

CHRISTOPHER GENE FAZZI, Plaintiff and Respondent, v.
NORMA JEAN KLEIN, Defendant and Appellant.

COUNSEL

Velasco Law Group, Paul D. Velasco, Richard J. Radcliffe and Dana M. Cannon for Defendant and Appellant.

Venable, Ben D. Whitwell and Justin J. Lowe for Plaintiff and Respondent.

## Opinion

**ARONSON, J.**—Norma Jean Klein appeals from an order granting "safe harbor" to her son, Christopher Gene Fazzi, to file a proposed petition in probate court challenging Norma's status and actions as trustee of two trusts in which Christopher is a beneficiary.[1] The proposed petition also challenges a trust provision directing that Christopher's brother, Michael, serve as the successor trustee to Norma.

In granting Christopher's safe harbor application, the trial court found neither of the two trusts contains a "no contest" clause and, moreover, even if the clause did apply, the proposed petition does not constitute a "contest" as defined in the Probate Code.[*]

### I

### BACKGROUND FACTS AND PROCEDURE

On January 29, 1987, Norma and her husband, Lloyd Klein, created a revocable trust entitled the Klein Family Trust (the Trust or the original trust) and concurrently executed "pour-over" wills. The Trust designated the two spouses as cotrustees of the Trust during their joint lifetimes.

According to the terms of the Trust, upon the death of either spouse, the survivor, as trustee, was to divide the trust assets into three new trusts: Trust A, Trust B, and Trust C. The Trust directed the trustee/surviving spouse to fund Trust A with his or her share of the community property and separate property, and this trust would remain revocable during that spouse's lifetime. The trustee was to place into Trusts B and C, according to a specified formula, the decedent spouse's separate property and share of community property. Christopher, his five siblings, and stepsiblings were to be the remainder beneficiaries of Trusts B and C, which would become irrevocable trusts when the first spouse died. The surviving spouse was to be the income beneficiary of all three trusts until his or her death.

The Trust contained a "no contest" clause that essentially provided any person, heir, or beneficiary under the Trust who "contest[s] in any court *any of the provisions of this instrument* . . . shall not be entitled to any distributions . . . or any benefits under this trust instrument." (Trust, ¶ 6.05, italics added.)

---

[1] Because all the individuals mentioned in this opinion are related and bear one of two last names, we refer to them by their first names. We intend no disrespect but simply aim for clarity and convenience. (*In re Marriage of Smith* (1990) 225 Cal.App.3d 469, 476, fn. 1 [274 Cal.Rptr. 911].)

[*] As we explain below, the two trusts do contain a "no contest" clause and Christopher's challenge to his brother's appointment as successor trustee violates that clause. Christopher's action to remove his mother is not a contest, however. Consequently, we reverse and direct the trial court to enter a new order granting the safe harbor application in part, and denying it in part.

Article 7 of the Trust specified the procedure for appointment of a successor trustee. Paragraph 7.01 provided that the trustee "may resign at any time upon giving written notice" to the beneficiaries and, upon receiving notice, the beneficiaries "shall designate a Successor Trustee, if one is not provided for hereinafter . . . ." Paragraph 7.02 provided: "In the event of the death, inability or unwillingness of LLOYD KLEIN and NORMA JEAN KLEIN, or the survivor, to act as Trustee, then MICHAEL GENE FAZZI shall be the Trustee." Michael is Christopher's brother.

Lloyd died on December 11, 1996, and Norma became the sole trustee. Nine months later, Norma executed an asset allocation agreement that distributed the Trust assets into the three subtrusts, A, B, and C.

On April 9, 2008, Christopher filed an application for a safe harbor determination under Probate Code former section 21320[2] to determine whether his "proposed petition" constituted a "contest" under the "no contest" provision of the Trust (¶ 6.05). In November 2008, Christopher withdrew that initial safe harbor application and filed the safe harbor application at issue in this appeal.

In this safe harbor application, Christopher requested a determination that his proposed petition did not violate the "no contest" clause of the Trust. The proposed petition sought the following: (1) removal of Norma as trustee "for cause"[3]; (2) a determination that paragraph 7.02 of the Trust, designating Michael as the successor trustee to Norma, applies only to the original trust and not to Trusts B and C, or if Michael is found to be the successor trustee to Trusts B and C, then a determination that Michael is "unfit" for that position and "disqualified" from serving; and (3) appointment of a professional fiduciary as successor trustee for Trusts B and C, with instructions to "investigate, account, and correct the actions" Norma took as trustee.

---

[2] All further statutory references are to the Probate Code. Effective January 1, 2010, the Legislature repealed former sections 21300 through 21308 (General Provisions) and former sections 21320 through 21322 (Declaratory Relief) and enacted a major revision of the statutory scheme governing no contest clauses. (See §§ 21310–21315.) The new law limits the enforceability of no contest clauses to only three types of claims: (1) direct contests brought without probable cause; (2) challenges to the transferor's ownership of property at the time of the transfer if expressly included in the no contest clause; and (3) creditor's claims and actions based on them, if expressly included in the no contest clause. (§ 21311, subd. (a); see also *Johnson v. Greenelsh* (2009) 47 Cal.4th 598, 601, fn. 2 [100 Cal.Rptr.3d 622, 217 P.3d 1194] (*Johnson*).) This new statutory scheme applies only to instruments that became irrevocable on or after January 1, 2001. (§ 21315.) Because Trusts B and C became irrevocable on December 11, 1996, the former law applies to the safe harbor determination at issue here.

[3] Christopher accuses Norma of breaching her fiduciary duties by enriching herself in the administration of Trusts B and C at the expense of the remainder beneficiaries. Among other things, he alleges Norma improperly diverted trust assets by overfunding Trust A and underfunding Trusts B and C, transferring properties of B and C to "unrelated partnerships," and failing to account for her dealings as trustee.

Christopher's application for a safe harbor determination advanced three contentions. First, Christopher argued the "no contest" clause in paragraph 6.05 applied only to the original trust and did not apply to Trusts B and C. Second, Christopher asserted that if the "no contest" clause did apply to Trusts B and C, the proposed petition did not violate that clause because it did not challenge the validity of the original trust, any of the subtrusts (A, B, or C), "or any provision thereof." Third, Christopher argued the "no contest" clause was unenforceable as a matter of public policy because it would shield trustee Norma's "malfeasance."

Norma filed a response and objections to the safe harbor application. Essentially, she argued the proposed petition violated the Trust's "no contest" clause because in seeking "to ignore the designation of Michael" as the successor trustee of Trusts B and C and to appoint in his stead a professional fiduciary, the petition sought relief in contravention of paragraph 7.02. Underpinning that argument was her additional contention that both the successor trustee and "no contest" provisions of the Trust applied to Trusts B and C. She further argued that the proposed petition to remove her as trustee for cause violated the "no contest" clause and, finally, that Christopher could not prevail on his proposed petition because it would require a determination of the petition on the merits, which is precluded by former section 21320, subdivision (c).

The trial court granted Christopher's application for a safe harbor determination. In a minute order dated August 6, 2009, the trial court stated its reasoning as follows: "The Court grants safe harbor on the following grounds: Trusts B and C do not contain a no contest clause, nor do they refer to or incorporate the no contest clause of the original Trust, which is no longer in existence. The proposed petition is not a 'contest' as defined in the Probate Code (see section 21300). There simply is no . . . challenge to the validity of trusts B or C, or to the original trust. . . . [¶] The proposed pleading doesn't contest provisions of the Trust."

This appeal followed.

II

DISCUSSION

Norma argues the trial court erred in granting Christopher safe harbor to file the proposed petition. She asserts the trial court erred in finding that the Trust's "no contest" clause did not apply to the subtrusts and the proposed petition did not constitute a "contest" under the terms of that clause. Norma's claims have merit.

## A. *The "No Contest" Clause Applies to the Subtrusts*

■  The rules for interpreting the scope of a "no contest" clause are well established. Where, as here, "[t]here is no conflict or question of credibility in the relevant extrinsic evidence[,] . . . interpretation of the trust is a question of law for our independent review. [Citation.] Although no contest clauses are enforceable and favored by the public policies of discouraging litigation and preserving the transferor's intent, they are nevertheless strictly construed and may not be extended beyond their plainly intended function. [Citations.]" (*Johnson, supra*, 47 Cal.4th at p. 604.) The key is to determine the intent of the trustors, Norma and Lloyd. "In construing a trust instrument, the intent of the trustor prevails and it must be ascertained from the whole of the trust instrument, not just separate parts of it." (*Scharlin v. Superior Court* (1992) 9 Cal.App.4th 162, 168 [11 Cal.Rptr.2d 448] (*Scharlin*).)

Christopher's argument for interpreting the "no contest" clause as inapplicable to Trusts B and C is beguilingly simple. He contends that because the Trust does not explicitly state the "no contest" clause applies to the subtrusts, it must be strictly construed as applying only to the original trust. But such a construction not only ignores the trustors' intent as revealed in "the whole of the trust," it is also patently unreasonable.

The trustors' intent that the "no contest" clause applies to the subtrusts is implicit in the terms of the Trust. This document, a revocable instrument, created and funded the three subtrusts upon the first trustor's death. (Trust, ¶ 4.02(b).) At operation, Trusts B and C were irrevocable, and a host of provisions in the original trust immediately came into play, establishing rules for the administration of the subtrusts. For example, paragraph 4.02(b) directed that each of the subtrusts "shall constitute and be held, administered and distributed by the Trustee as a separate Trust." Paragraphs 4.04 and 4.05 established distribution rules for the assets and principal of Trusts B and C. Most importantly, for our purposes, paragraph 6.05 prohibited any beneficiary entitled to "any distributions . . . or any benefits under this trust instrument" from "contest[ing] in any court any of the provisions of this instrument." Taken together, these provisions reveal the trustors' intent that the Trust should govern the trustee's administration of the subtrusts upon their creation and funding.

This conclusion the "no contest" clause applies to the subtrusts is the only reasonable construction of the clause. Because the original trust was revocable, a "contest" was never a possibility during the joint life of the trustors. Only upon Lloyd's death, when the remainder beneficiaries gained their irrevocable interests in Trusts B and C, did the possibility of a "contest" pose a risk to the trustors' plan for the assets they placed in trust. Ascertaining the

intent of the trustors, as we must, from "the whole of the trust instrument," we conclude the "no contest" clause applies to Trusts B and C.

*McIndoe v. Olivos* (2005) 132 Cal.App.4th 483 [33 Cal.Rptr.3d 689] (*McIndoe*) bolsters our conclusion. In *McIndoe*, the husband and wife trustors of a revocable family trust created and funded two separate trusts, a "survivor's trust" and an "exempt trust," upon the death of the first spouse, a plan that differs from the Kleins' only in the number of subtrusts created, two rather than three. The McIndoe family trust, also like the Kleins', included a no contest clause that did not specifically state that it applied to the subtrusts. After the death of the first spouse in *McIndoe*, the surviving spouse repeatedly exercised her right to amend the revocable "survivor's trust," which held her separate property and share of the trustors' community property. These amendments favored one sibling beneficiary over the other, and when the surviving trustor died, the disadvantaged beneficiary challenged the amendments on the ground of undue influence. The disadvantaged beneficiary sought a safe harbor determination that her proposed contest to the heavily amended survivor's trust would not constitute a contest to the exempt trust. The court agreed, based on the terms of the original trust.

Importantly for our purposes, the court in *McIndoe* affirmed that "the no contest clause in the original trust applies to challenges to the original trust, the exempt trust and the survivor's trust," even though the no contest clause there did not specifically state it applied to the subtrusts. (*McIndoe, supra,* 132 Cal.App.4th at p. 487.) The court stated, "The no contest clause was located in the 'general provisions' section of the trust document, which specified that all general provisions 'apply to each trust established hereunder[.]' . . . Because the no contest clause of the original trust applied to all subtrusts, there was no need to add a no contest clause to the exempt trust." (*Id.* at p. 488.)[4]

█ Like the "no contest" clause in *McIndoe*, the "no contest" clause in the present case was also located in a "general provisions" section of the Trust—article 6, entitled "MISCELLANEOUS PROVISIONS." (Trust, ¶¶ 6.01 to 6.06.) Though article 6 did not specify that its provisions applied to each subtrust, that intent was implied in the provisions themselves, and from the instrument as a whole, as explained above. Consequently, *McIndoe* supports our finding that the "no contest" clause applied to Trusts B and C. (See also *Scharlin, supra,* 9 Cal.App.4th 162, 170–171 [where original trust created two subtrusts, revocable survivor's trust, and irrevocable decedent's trust, "no contest" clause in original trust controls decedent's trust].)

---

[4] The court in *McIndoe* went on to find that under the terms of the trust, the beneficiary could contest the survivor's trust without jeopardizing her interests under the exempt trust. "Had the trustors intended a contest to a particular subtrust result in a contest to all subtrusts, they could have so stated." (*McIndoe, supra,* 132 Cal.App.4th at p. 489.)

Christopher relies on two cases that are easily distinguishable. In *Perrin v. Lee* (2008) 164 Cal.App.4th 1239 [79 Cal.Rptr.3d 885] (*Perrin*), our court reversed an order denying safe harbor to a proposed petition challenging amendments to a trust. We based our decision to grant safe harbor on the fact the trust failed to state the "no contest" clause specifically applied to trust *amendments* (*id.* at p. 1247), and former section 21305, subdivision (a)(3), "requires an explicit mention of the amendment, or codicil, in the original no-contest clause or the amendment/codicil must contain a no-contest clause" for the "no contest" clause to apply (164 Cal.App.4th at p. 1249). *Perrin's* safe harbor conclusion has no bearing here because the case before us involves subtrusts specifically created by the Trust and inferentially covered by the Trust's "no contest" clause, rather than, as in *Perrin*, an amendment to a trust to which the "no contest" clause did not apply.

Similarly, *Meyer v. Meyer* (2008) 162 Cal.App.4th 983 [76 Cal.Rptr.3d 546] (*Meyer*), does not support Christopher's position that the "no contest" clause is inapplicable to Trusts B and C. In *Meyer*, the court held the beneficiaries should be granted safe harbor to challenge a testamentary trust because the "no contest" clause was contained in the decedent's will and by its express terms applied only to the will. (*Id.* at p. 996.) As with *Perrin*, this case is distinguishable on its facts.

### B. *The Proposed Petition Constitutes a "Contest" of the Trust*

The Probate Code defines a "contest" as "any action identified in a 'no contest clause' as a violation of the clause. . . ." (Former § 21300, subd. (a).) The "no contest" clause at issue here is broad. It prohibits a beneficiary from contesting "any of the provisions of this instrument." (Trust, ¶ 6.05.) " ' "Whether there has been a 'contest' within the meaning of a particular no-contest clause depends upon the circumstances of the particular case and the language used." [Citations.]' [Citation.]" (*Johnson, supra,* 47 Cal.4th at p. 604.) Because we are applying the language of the Trust to circumstances that are not in dispute, our review is de novo. (*Ibid.*)

Christopher argues his proposed petition is not a "contest" because it "does not challenge, either directly or indirectly, the validity of the Original Trust." He asserts his petition "does not seek to invalidate any provision of the Original Trust . . . and, instead, seeks to ensure that the testator's intent as expressed in the Original Trust . . . is properly carried out." Thus, Christopher contends that if he obtains all the relief requested in his petition, "the separate trusts will remain unaltered, and the various trust beneficiaries will receive only what they are due under the Original Trust . . . ." His argument does not ring true.

The proposed petition directly contravenes an express directive in the Trust: that his brother Michael serve as successor trustee in the event of Norma's "death, inability or unwillingness . . . to act as Trustee." (Trust, ¶ 7.02.) This provision clearly expresses the trustors' intent regarding who will serve as their successor trustee, yet Christopher tries to thwart this intent with a twofold attack.

First, Christopher asserts the Trust does not *"provide for a Trustee to Trusts B/C or a successor,"* and that paragraph 7.02 applies only to the original trust, not to the subtrusts. (Italics added.) He argues paragraph 7.02 "governs only the Klein Family Trust and that *none of the terms of that Trust were referred to or incorporated into Trusts B/C* which were expressly created to be held separate and a part [*sic*] from the Klein Family Trust." (Italics added.) In other words, Christopher asserts the Trust designates neither a trustee nor a successor trustee to administer the subtrusts. But this argument flatly contradicts much of article 4 of the Trust, which details how the trustee is to hold and administer the three subtrusts. (See, e.g., ¶ 4.02 (b) [upon first trustor's death, trustee shall divide Trust estate into three subtrusts, each of which "shall . . . be held, administered and distributed by the Trustee"].)

Christopher's second attack on the successor trustee provision directly contradicts the trustors' intent. Christopher argues that if paragraph 7.02 does apply to the subtrusts, and Michael is found to be the successor trustee, then the court should find Michael "unfit" to serve because he lacks the necessary education and skill to perform his duties. Christopher also alleges Michael lacks "the requisite good faith and impartiality," as evidenced by his "openly and outrageously hostile [attitude] toward [Christopher]."

For many, the decision of who will serve as trustee or successor trustee is a significant one. Here, Lloyd and Norma made clear their intention that their son Michael would follow one of them as successor trustee. Christopher's assertion the court should ignore this intent and override paragraph 7.02 because he considers Michael prospectively unfit is indisputably a contest of one of the provisions of the Trust. It follows that the trial court erred in granting Christopher safe harbor to file his proposed petition.

The trial court, however, correctly concluded Christopher's request to remove Norma as trustee "for cause" did not violate the "no contest" clause. The simple reason is that the Trust does not prohibit an action to remove an individual trustee, for cause or otherwise. In fact, the Trust does not address the subject.

█ Case law holds that, absent a specific provision barring a challenge to the trustee, a removal action does not violate the "no contest" clause. (*Estate*

*of Bullock* (1968) 264 Cal.App.2d 197, 201 [70 Cal.Rptr. 239] (*Bullock*) ["an action to oust the trustee . . . in itself is not necessarily opposing . . . or seeking to impair [or] invalidate" the trust; "it is difficult to see how . . . any such action would or could thwart the will of the" trustor]; *Estate of Lewy* (1974) 39 Cal.App.3d 729, 734 [113 Cal.Rptr. 674] [beneficiary's action to challenge executrix for incompetency did not attack validity of the will].) In *Johnson, supra,* 47 Cal.4th 598, the California Supreme Court held that a challenge to a successor trustee on the ground the surviving trustee was mentally incompetent to appoint a successor did not violate the trust's "no contest" clause. (*Id.* at p. 605.) The Supreme Court explained the challenge did not "attack[] the validity of an instrument by seeking relief inconsistent with its terms"; in other words, the challenge "did not conflict with any trust provisions." (*Ibid.*)

Moreover, even if the "no contest" clause at issue here specifically prohibited any action to remove the trustee, that provision would be unenforceable. In *Estate of Ferber* (1998) 66 Cal.App.4th 244 [77 Cal.Rptr.2d 774] (*Ferber*), this court declared that "[n]o contest clauses that purport to insulate executors completely from vigilant beneficiaries violate" public policy. (*Id.* at p. 253; see also *Bullock,* 264 Cal.App.2d at p. 201 ["there is a well-recognized public interest that estates of decedents be administered in such a manner that there can be no doubt with reference to the correctness of the proceedings . . ."].) We concluded in *Ferber* that "no contest" clauses barring removal actions are enforceable only as to frivolous attempts to oust an executor or trustor. (*Ibid.*)[5] Thus, the trial court here correctly asserted a trustee cannot "hide behind a no contest clause" and commit breaches of fiduciary duty with impunity. Upon remand, Christopher is free to pursue his challenge to Norma for cause without jeopardizing his beneficial interest in Trusts B and C, assuming the challenge is not frivolous.

---

[5] In the aftermath of *Ferber,* the Legislature went one step further and banned the enforcement of a no contest clause against *any* action to remove a fiduciary. Former section 21305, subdivision (b) declared that, "notwithstanding anything to the contrary in any instrument, the following proceedings do not violate a no contest clause as a matter of public policy: [¶] . . . [¶] (6) A pleading challenging the exercise of fiduciary power. [¶] (7) A pleading regarding the appointment of a fiduciary or the removal of a fiduciary." Former section 21305 does not apply here because the subtrusts became irrevocable on December 11, 1996, and the statute applies only to instruments that became irrevocable on or after January 1, 2001. (Former § 21305, subd. (d); *Hermanson v. Hermanson* (2003) 108 Cal.App.4th 441, 445 [133 Cal.Rptr.2d 486].) Former section 21305 is among the statutes the Legislature repealed effective January 1, 2010. (See fn. 2, *ante.*)

## III

### Disposition

The order granting Christopher's application for a safe harbor determination is reversed. The trial court is directed to enter a new order granting the safe harbor application on that portion of the proposed petition challenging Norma as trustee for cause, and denying the application on the remaining portions of the proposed petition. Norma is entitled to her costs on appeal.

Rylaarsdam, Acting P. J., and Ikola, J., concurred.