Filed 3/29/13  McCaslin v. England CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MARK McCASLIN et al., | |
| Plaintiffs and Respondents, | G046063 |
| v. | (Super. Ct. No. A216479) |
| RICHARD A. ENGLAND, as Trustee, etc., | O P I N I O N |
| Defendant and Appellant. | |

Appeal from an order of the Superior Court of Orange County, Daniel Didier, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.

Bidna & Keys, Howard M. Bidna, Richard D. Keys and Jon A. Longerbone for Defendant and Appellant.

Nicora and Hespe, Albert J. Nicora and Frand Hespe; Law Offices of Joel Franklin and Joel Franklin for Plaintiffs and Respondents.

Richard A. England (appellant), trustee of the Robert L. McCaslin Separate Property Trust (the trust), appeals from the trial court's order granting the "safe harbor" petition (former Prob. Code, § 21320) of Mark McCaslin and Brett Miller (respondents).[1] We affirm.

## FACTS[2]

Robert L. McCaslin, executed the trust in June 1979. It was amended and restated in its entirety on April 24, 1996 and partially amended in December 1999. McCaslin placed his partnership interests in Triple Net Leasing and H.M.S. Company, shares of stock in TriCal, Inc., Western Cascade, Inc., Soil Chemicals Corporation and Bolsa Research Associates, Inc., and a $3,500,000 promissory note payable by TriCal, Inc. in the trust.

According to Article III of the trust as amended, if Robert L. McCaslin's second wife, Elsie J. McCaslin, survived him, the trust estate was to be divided into two subtrusts, a Qualified Terminable Interest Property Trust (QTIP) and a Unified Credit Trust (UCT). Elsie J. McCaslin was entitled to the net income from the QTIP distributed in monthly installments for her lifetime. Upon her death, the income of the QTIP was to be distributed to her estate, and the assets of the QTIP were to be divided between the remainder beneficiaries as provided for in the UCT. The UCT called for distribution in equal shares to the remainder beneficiaries, designated as the five children of Robert L. McCaslin's first marriage, or the living issue of any of the children who predeceased him.

_____

[1] All further statutory references are to the Probate Code. Section 21320 has been referred to as a "'safe harbor'" provision (*Genger v. Delsol* (1997) 56 Cal.App.4th 1410, 1428), and we adopt this nomenclature for ease of reference and clarity.

[2] Respondent's unopposed request for judicial notice is granted. Appellant's request to incorporate the complete first amended petition and all of its exhibits is likewise granted.

Distribution was to occur "as soon as reasonably possible" after the payment of certain specified expenses, including bona fide debts, funeral expenses, estate taxes, and expenses incurred in the administration of the estate.

Robert L. McCaslin was the trustee during his lifetime. He named appellant, his cousin and stockbroker, and First American Trust Company to serve as successor co-trustees, although First American Trust Company declined to serve. The purported reason for appellant's appointment was "dysfunction between the family members who are beneficiaries of this trust . . . and . . . conflicts of interest between certain members of the family." The trust also designated Mark McCaslin, Robert L. McCaslin's son, as Special Trustee over the trust's shares of stock in TriCal, Inc. and Soil Chemicals Corporation with the sole right to vote the shares of stock in these corporations. The trust allowed for trustee fees according to the "usual and customary fee for services" charged by a corporate trustee, or the equivalent amount to appellant if he became the sole trustee.

The trust also contained the following no contest clause: "Except as otherwise provided in this Trust or in the Will of Trustor, Trustor has intentionally omitted to provide herein for any of his heirs living at the date of his death. If any heir or beneficiary under this Trust or any other person in any manner directly or indirectly contests or attacks this Trust or any of its provisions, or seeks an adjudication in any proceeding in any Court that this Trust of any of its provisions or that said Will or any of its provisions is void or that is designed to thwart Trustor's wishes as expressed in this Trust or in said Will or any supplementary written 'Instructions to Trustees' any share or interest in this Trust given to said contestant is revoked and shall be disposed of in the same manner provided herein as if that contestant had predeceased the Trustor, without issue. The Trustee is hereby authorized to defend, at the expense of the Trust Estate, any contest or other attack of any nature on this Trust or any of its provisions."

3

Robert L. McCaslin died in November 2000.[3] Elsie J. McCaslin died nine years later in November 2009. After her death, $6,162,250 in estate taxes became due. As of June 2010, the trust had assets in excess of $18 million.

In November 2010, respondents filed a safe harbor petition for declaratory relief pursuant to former section 21320. They sought the immediate suspension of appellant's powers as successor trustee for breach of his fiduciary duties and an order prohibiting the payment of attorney fees for opposing the petition. The petition alleged the trust had assets of approximately $14,700,000 in cash, investment accounts, and interest in partnerships and closely held corporations, but that a disagreement had arisen concerning the management of the trust. The beneficiaries argued appellant had breached his fiduciary duty by paying himself approximately $1 million in fees while managing only $6 million of the trust's assets, failing to communicate or cooperate with them, adopting a distribution plan that called for between three and 10 years to pay the estate tax liability, and by deciding to adopt an investment strategy that virtually ensured he would continue to charge in excess of $100,000 annually in administration fees during that time period.

Respondents also submitted a verified proposed petition for removal (removal petition) that contained essentially the same allegations as the safe harbor

---

[3] "Effective January 1, 2010, the Legislature repealed former sections 21300 through 21308 (General Provisions) and former sections 21320 through 21322 (Declaratory Relief) and enacted a major revision of the statutory scheme governing no contest clauses. (See §§ 21310–21315.) The new law limits the enforceability of no contest clauses to only three types of claims: (1) direct contests brought without probable cause; (2) challenges to the transferor's ownership of property at the time of the transfer if expressly included in the no contest clause; and (3) creditor's claims and actions based on them, if expressly included in the no contest clause. [Citations.] This new statutory scheme applies only to instruments that became irrevocable on or after January 1, 2001. (§ 21315.)" (*Fazzi v. Klein* (2010) 190 Cal.App.4th 1280, 1283, fn. 2.) Because the trust became irrevocable at Robert L. McCaslin's death in November 2000, the former law applies to the safe harbor determination at issue here, although the result would be the same under the new law.

petition. The removal petition included a schedule of assets and liabilities that reflected a total gross estate of $16,586,569 and a balance due in estate taxes of $4,320,089.

Appellant asserted the safe harbor petition, although "styled in the form of an attack" on his management, was in substance an attack on the trust and an attempt to thwart the intent of the trustor. He explained that the beneficiaries and the court had approved eight separate accountings for the years 2000 through 2009, and they had an inherent conflict of interest due to Mark McCaslin's control over TriCal, Inc. and Soil Chemicals Corporation.

Appellant's trial brief asserted, "While carefully crafted in the form of a petition to remove and surcharge the Trustee, the substance of the Proposed Petition violates the no contest clause contained in section 7.9 of the Trust as an attack on the Trust provisions and an effort to thwart the Trustor's intent as to payment of estate taxes, timing of asset distribution, selection of trustee and trustee compensation." It further alleged the safe harbor petition and the removal petition were "frivolous and contrary to Court orders approving the Trustee's first eight annual accountings." Moreover, appellant claimed the removal petition was "contrary to the terms of the Trust" and designed to "take control of the Trust from the independent trustee . . . who has been serving as trustee for more than a decade, in order to distribute the mostly illiquid trust assets without paying the $3.5 million in outstanding estate taxes (for which the Trustee could be personally liable)."

The matter came on for hearing in September 2011. The court issued a tentative ruling to grant the safe harbor petition, stating "it appears, in looking at the petition and the statute, that there's not a contest here; that the petition appears to be challenging the discretion of the trustee, not really challenging the [trust] document at all. So the tentative would be to grant the petition."

When questioned by the trial court, appellant's attorney stated, "It is a contest because the trustor – the trustor intended to grant, in this case Mr. England,

5

certain discretion, discretion regarding payment of taxes. We don't think so clearly [*sic*] discretion vis-à-vis the timing of distribution of the assets. But when the trustee exercises its discretion within the meaning of the – within the discretion given him by the trust instrument, a challenge to that is in fact a challenge and an attack on the trust and its provisions." Counsel also argued the removal petition constituted a "judicial proceeding which would thwart the trustor's intent. And the trustor's intent in this case was that the taxes – state [*sic*] taxes be paid before there be a distribution. [¶] If we look at what is really at issue and – now this has been a tough case to get our arms around, in large part because the petitioners have done a very crafty job of trying to take what is in fact an attack on the trust and what is in fact an attack on the trustor's intent and tried to turn that into something that wouldn't look like a contest."

When appellant's counsel sought to introduce expert testimony and numerous exhibits, the court stated, "this is not dissimilar, in my opinion, from a judgment on the pleadings. I look at the no-contest provision. I look at the petition. It's not a contest. I'm not going to be digging down beneath. I'm not going to hear testimony. This is law and motion."

Appellant's counsel then argued respondents could not litigate the validity of prior accountings. The court agreed "there might be other res judicata, and there might be a lot of reasons, but I don't think the terms of the trust necessarily are involved there. I don't think there's anything that they're challenging that requires a voiding of the language in the trust. It's not challenging the terms of the trust."[4] After additional argument, the court concluded, "this is a garden-variety boilerplate no-contest clause. It's not anything that you don't usually see, and I quite frankly say it again: There's not a contest. I mean you are valiantly advocating your position here, but quite frankly, counsel, it is not compelling."

---

4      Respondents concede they may not challenge appellant's fees for any period prior to November 5, 2009, the date the income beneficiary died.

6

Former section 21320 stated, in pertinent part, "(a) If an instrument containing a no contest clause is or has become irrevocable, a beneficiary may apply to the court for a determination of whether a particular motion, petition, or other act by the beneficiary, including, but not limited to, creditor claims . . . would be a contest within the terms of the no contest clause.  [¶] (b) A no contest clause is not enforceable against a beneficiary to the extent an application under subdivision (a) is limited to the procedure and purpose described in subdivision (a).  [¶] (c) *A determination under this section of whether a proposed motion, petition, or other act by the beneficiary violates a no contest clause may not be made if a determination of the merits of the motion, petition, or other act by the beneficiary is required.*  [¶] (d) A determination of whether Section 21306 or 21307 would apply in a particular case may not be made under this section."  (Italics added.)

A no contest clause creates a condition on the gifts and provisions of the trust.  (*Burch v. George* (1994) 7 Cal.4th 246, 254.)  Consequently, the beneficiary's right to take the share provided under such an instrument is conditioned upon that beneficiary's agreement to acquiesce to its terms.  (*Ibid.*)  Thus, any direct or indirect attack on the trust which seeks to void the trust or any of its provisions, or that is designed to "thwart the Trustor's wishes as expressed in this Trust," revokes the beneficiaries' share or interest in the trust.

Where there is no conflict of evidence or question of credibility regarding extrinsic evidence, interpretation of a trust is a question of law subject to our independent review.  (*Fazzi v. Klein* (2010) 190 Cal.App.4th 1280, 1285.)  Whether there is a contest within the meaning of a specific no contest clause depends upon the factual circumstances of the case and the language of the trust clause.  (*Cook v. Cook* (2009) 177

7

Cal.App.4th 1436, 1442.)  It is the trustor's intentions that control.  (*Ibid.*, see also *Newman v. Wells Fargo Bank* (1996) 14 Cal.4th 126, 134.)

No contest clauses are favored by the policy of discouraging litigation, but disfavored by the policy against forfeiture.  (*Jacobs-Zorne v. Superior Court* (1996) 46 Cal.App.4th 1064, 1073.)  Consequently, no contest clauses are strictly construed and may not be extended beyond their plainly intended function.  (*Johnson v. Greenelsh* (2009) 47 Cal.4th 598, 604.)

Appellant contends the safe harbor petition should have been denied because respondents failed to meet their burden of proof to establish (1) the safe harbor petition and the removal petition do not violate the trust's no contest clause, (2) the safe harbor petition and the removal petition are not frivolous, and/or (3) the safe harbor petition cannot be determined without ruling on the merits of the removal petition.  We disagree with each contention.

First, with respect to the respondent's burden to prove the removal petition does not violate the no contest clause, we note the no contest clause at issue here prohibits actions against any of the trust provisions, or those "designed to thwart Trustor's wishes as expressed in this Trust . . . ."  But respondents attacked appellant's management of the trust, not any of the specific trust provisions.  The removal petition does not challenge Robert L. McCaslin's selection of a successor trustee, only the selected trustee's performance of his fiduciary duties.  We disagree with appellant's characterization of the removal petition as "an effort to thwart the Trustor's intent as to payment of estate taxes, timing of asset distribution, selection of trustee and trustee compensation."  To the contrary, the removal petition seeks to ensure the trustee will timely pay estate taxes and distribute the trust's assets "as soon as reasonably possible" in accordance with the trustor's wishes.

Second, the question of whether respondent's safe harbor petition is frivolous involves a factual determination, and an examination of the facts underlying the

8

safe harbor petition would be improper for a section 21320 proceeding. (*Estate of Ferber* (1998) 66 Cal.App.4th 244 (*Ferber*), citing *Genger v. Delsol* (1997) 56 Cal.App.4th 1410, 1428.) In *Ferber,* the beneficiary of an estate sought a determination under section 21320 that several proposed actions, including a petition to remove the executor, would not violate the "no-contest" clause in the decedent's will.

In reaching its decision, the appellate court weighed two competing public policies. First, the court recognized, "No contest clauses that purport to insulate executors completely from vigilant beneficiaries violate the public policy behind court supervision." (*Ferber*, *supra*, 66 Cal.App.4th at p. 253.) However, the court also acknowledged that no contest clauses are "'favored by the public policies of discouraging [unnecessary] litigation and giving effect to the purposes expressed by the testator.' [Citation.]" (*Id*. at p. 254.) After balancing the competing policy interests involved, the appellate court concluded the enforcement of no contest clauses should apply only against beneficiaries who attempt to oust an executor based on frivolous grounds. (*Ferber*, *supra*, 66 Cal.App.4th at pp. 254-255; see also *Fazzi*, *supra*, 190 Cal.App.4th at p. 1289, fn. omitted ["'no contest' clauses barring removal actions are enforceable only as to frivolous attempts to oust an executor or trustor.'"]) Here, the safe harbor petition is not frivolous on its face, although it may be proved otherwise during proceedings on the underlying removal petition. (See *Fazzi*, *supra*, 190 Cal.App.4th at p. 1289.)

Finally, with respect to appellant's third contention, the merits of the safe harbor petition can be adjudicated without a ruling on the merits of the removal petition. The trial court was not required to determine the merits of respondent's claims, only that their attempt to adjudicate these claims would not violate the trust's no contest clause. The beneficiary of a trust must be able to petition the courts to determine whether a trustee is properly carrying out his or her fiduciary duties toward the beneficiary without fear of forfeiture. (See *Estate of Miller* (1964) 230 Cal.App.2d 888, 908-909; *Estate of Bullock* (1968) 264 Cal.App.2d 197, 201.) As noted in *Fazzi*, "Case law holds that,

9

absent a specific provision barring a challenge to the trustee, a removal action does not violate the 'no contest' clause. [Citations.]" (*Fazzi*, *supra*, 190 Cal.App.4th at pp. 1288-1289.)

The trust here does not contain a provision barring any challenge to the trustee. "Moreover, even if the 'no contest' clause at issue here specifically prohibited any action to remove the trustee, that provision would be unenforceable." (*Fazzi*, *supra*, 190 Cal.App.4th at pp. 1289.) Consequently, respondents may pursue their challenge to appellant's administration of the trust with respect to the payment of estate taxes and distribution of trust assets without jeopardizing their interests under the trust. To hold otherwise would be to insulate the trustee from any scrutiny of the manner in which he has discharged his duties under the trust.

## DISPOSITION

The order is affirmed. Plaintiffs are entitled to costs on appeal.

THOMPSON, J.

WE CONCUR:

O'LEARY, P. J.

ARONSON, J.

10