Filed 2/24/25

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| SCOTT PACKARD, | D082480 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2022-00017732-PR-TR-CTL) |
| GREGORY ROY PACKARD, as Trustee, etc., | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of San Diego County, Julia C. Kelety, Judge. Reversed.

Klapach & Klapach, Joseph Klapach; Borden Law Office, Alex Borden and Stephanie Chao for Plaintiff and Appellant.

Cunneen Booth, Dawn Hall Cunneen and Jeffrey S. Kaufman for Defendant and Respondent.

Scott Packard (Scott) appeals from an order granting judgment in favor of Gregory Roy Packard (Greg), as trustee for Newton Roy Packard Trust, on Scott's petition for construction and reformation of an amendment to the trust. Scott contends that the probate court erred in finding that his petition constituted a trust contest subject to the 120-day statute of limitations period

set forth in Probate Code section 16061.7.[1]  We conclude that Scott's petition was one to reform the trust to correct an alleged mistake in the trustor's expression of his intent, rather than a trust contest, and it was therefore not subject to the 120-day statute of limitations period.  Accordingly, the probate court erred in granting Greg's motion for judgment on the pleadings.

FACTUAL AND PROCEDURAL BACKGROUND

In 2010, Newton Roy Packard (Newton) created and executed The Newton Roy Packard Trust.  The trust provided that upon Newton's death, "the trustee shall distribute the trust estate in equal shares to [his two adult sons] Gregory Roy Packard and Scott Eric Packard."  The trust reserved the trustor's power to "[a]mend any provision of this declaration or any amendment to this declaration" "by a writing signed by the trustor and delivered to the trustee."  The trust also contained an "Attack on the Trust" clause.  This clause, commonly referred to as a "no contest" clause, stated: "Except as otherwise provided in this trust, the trustor has intentionally and with full knowledge omitted to provide for the trustor's heirs.  If any beneficiary under this trust, directly or indirectly, contests this trust or any of its provisions in any manner, any share or interest in the trustor's estate given to that contesting beneficiary under this trust is revoked and shall be disposed of in the same manner provided herein as if that contesting beneficiary had predeceased the trustor without issue."  The trust appointed Greg to serve as first successor trustee and Scott to serve as second successor trustee.

In 2012, two years after executing the trust, Newton executed and notarized a First Amendment to the Newton Roy Packard Trust, which

---

[1]     All undesignated statutory references are to the Probate Code.

provided that Greg would receive Newton's residence and Scott would receive a sum equal to the value of the residence. Specifically, section 2.4, paragraph (b) of the first amendment read: "From the remaining trust estate, SCOTT ERIC PACKARD shall receive a sum equal to the value of trustor's residence as determined by a certified real estate appraisal obtained from an independent appraiser chosen and agreed upon by both GREGORY ROY PACKARD and SCOTT ERIC PACKARD." The trust's remaining property would then be divided equally between Greg and Scott.

In 2014, Newton appears to have handwritten the word "one-half" into the first amendment, followed by his initials and the date ("N.R.P. 5-16-2014"). With this handwritten interlineation, section 2.4, paragraph (b) of the trust read: "From the remaining trust estate, SCOTT ERIC PACKARD shall receive a sum equal to one-half the value of trustor's residence as determined by a certified real estate appraisal obtained from an independent appraiser chosen and agreed upon by both GREGORY ROY PACKARD and SCOTT ERIC PACKARD."

Newton died in 2020, with Greg and Scott surviving him. Upon Newton's death, Greg became the successor trustee of the trust. Greg and Scott mutually identified an appraiser, who valued the property at $970,000.00 in July 2020. In August 2020, Greg's counsel sent Scott a "Notification by Trustee" under section 16061.7, which stated: "You may not bring an action to contest the Trust more than 120 days from the date this notification by the Trustee is served upon you or 60 days from the date on which a copy of the terms of the Trust is delivered to you during that 120-day period, whichever is later."

In June 2021, Scott sent a letter to Greg's counsel stating: "I agree to a reappraisal of the property by Mr. Friesen. . . . [¶] . . . [¶] I suggest the

3

following:  [¶] . . . [¶]  2. distribution of one-half of the appraisal from Gregory Roy Packard to Scott Eric Packard, via cash deposit to TD Ameritrade account . . . within 15 days."  In July 2021, both Greg and Scott accepted the updated appraised value of the residence.

In May 2022, Scott filed a petition asking the probate court to construe and reform the first amendment so that it accurately reflected what he alleged to be Newton's intent.  Specifically, Scott asserted that Newton intended the "one-half" interlineation on the first amendment to ensure that Greg and Scott received equal distributions from the trust.  Scott argued that the interlineation as it appeared did not accurately reflect Newton's intent that his assets be distributed equally between his sons, and that the Probate Code permits the consideration of extrinsic evidence to demonstrate the true intent of the trustor.  Greg filed a response and objections to the petition.

In November 2022, Greg filed a motion for judgment on the pleadings, contending that although Scott's petition was styled as one for construction or reformation, Scott was in reality contesting the trust because he sought to invalidate the handwritten changes Newton made to the first amendment. Greg argued that Scott's petition was time barred because he failed to file it within the 120-day limitations period for trust contests set forth in section 16061.8.  He therefore asked the probate court to dismiss Scott's petition with prejudice.

Scott opposed the motion, arguing that his petition for reformation and construction did not constitute a trust contest under section 16061.8 and was therefore not subject to its statute of limitations.  He argued that extrinsic evidence can be admitted to reform a trust, even if seemingly unambiguous, where clear and convincing evidence establishes an error in the expression of the testator's intent at the time the document was drafted and also

4

establishes the testator's actual specific intent at the time the document was executed. Scott asserted that because his petition for reformation and construction did not concern the validity of the interlineation, but rather Newton's true intent in executing the interlineation, the petition was not a contest to the trust and the motion for judgment on the pleadings must be denied.

In reply, Greg argued that the interlineation at issue was clear and thus there was no ambiguity. He reiterated that Scott's argument sought to invalidate Newton's second amendment and his petition was therefore a trust contest barred by the statute of limitations.

The probate court held a hearing on Greg's motion for judgment on the pleadings and then issued a minute order in March 2023 granting the motion. The court found that the interlineation did not create an ambiguity and that, although "the court may consider extrinsic evidence regarding the circumstances under which a trust was made in order to interpret the trust instrument, it cannot give a trust a meaning to which it is not reasonably susceptible." The court further found that Scott did not identify a plausible alternate interpretation of this phrase and that his requested remedy had the practical effect of invalidating the second amendment. Accordingly, the court concluded that the request for construction and reformation was a contest to the trust and barred by the statute of limitations in section 16061.8. The court granted Greg's motion without leave to amend.

DISCUSSION

A. *Standard of Review*

A motion for judgment on the pleadings is similar to a general demurrer, and the standard of review on appeal is the same. (Code Civ. Proc., § 438, subd. (f)(2); *Estate of Dayan* (2016) 5 Cal.App.5th 29, 39–40.) We

5

review de novo the probate court's judgment on the order granting the motion for judgment on the pleadings to determine whether the petition states a cause of action. (See *Bucur v. Ahmad* (2016) 244 Cal.App.4th 175, 184–185.) We accept as true all material facts properly pleaded, but not contentions, deductions, or conclusions of fact or law. (*Ibid.*; *Estate of Dayan*, at p. 40.) " 'Moreover, the allegations must be liberally construed with a view to attaining substantial justice among the parties,' " and " '[o]ur primary task is to determine whether the facts alleged provide the basis for a cause of action . . . under any theory.' " (*Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1232.)

B. *Legal Principles*

Section 16061.7, subdivision (a)(1) requires a trustee to serve notice on a trust's beneficiaries when the trust has become irrevocable due to the settlor's death. (*Bridgeman v. Allen* (2013) 219 Cal.App.4th 288, 293.) Section 16061.8 provides that any person served with such a notification "shall not bring an action to contest the trust more than 120 days from the date the notification by the trustee is served upon the person, or 60 days from the date on which a copy of the terms of the trust is delivered pursuant to Section 1215 to the person during that 120-day period, whichever is later." (See *ibid.*) Section 16061.8 does not define the term "contest."[2]

---

2    Elsewhere in the Probate Code, a "contest" to a will is defined as "a pleading filed with the court by a beneficiary that would result in a penalty under a no contest clause, if the no contest clause is enforced." (§ 21310, subd. (a).) A "direct contest" is defined as "a contest that alleges the invalidity of a protected instrument or one or more of its terms, based on one or more" enumerated grounds, including things such as forgery, lack of capacity, fraud, or undue influence. (§ 21310, subd. (b).) Enforcement of a no contest clause is permitted only against a direct contest brought without probable cause, a creditor claim, or a challenge to a transfer of property

6

"In determining whether [a petition] constitutes an action to contest [a] trust within the purview of section 16061.8, we look to the substance of that petition and its 'practical effect.' We are not bound by its label." (*Estate of Stoker* (2011) 193 Cal.App.4th 236, 241.) We must consider the language of the clause, other terms of the trust, and extrinsic evidence of the trustor's intent to determine whether an action is a contest that violates the no contest clause. (*Giammarrusco v. Simon* (2009) 171 Cal.App.4th 1586, 1601 (*Giammarrusco*); *Dae v. Traver* (2021) 69 Cal.App.5th 447, 461 (*Dae*) ["Whether there has been a contest within the meaning of a particular no contest clause depends upon the individual circumstances of the case and the language of the particular instrument."].) Whether a petition constitutes a trust contest must be determined from a consideration of the purposes the trustor sought to attain through the trust, which may include extrinsic evidence of the trustor's intent. (*Dae*, at p. 461.)

C. *Analysis*

Scott contends that his petition was intended to reform the trust to reflect Newton's true intent and therefore was not a contest to the trust subject to section 16061.8's 120-day limitations period.[3] We agree.

Historically, disputes over the interpretation of instruments have not usually been treated as violating a no contest clause. (*Donkin, supra*, 58 Cal.4th at p. 434; see also *Estate of Black* (1984) 160 Cal.App.3d 582, 588 ["Numerous cases hold that . . . a petition seeking construction or

_____

amounting to a forced election. (§ 21311; *Donkin v. Donkin* (2013) 58 Cal.4th 412, 426 (*Donkin*).)

[3]    Unlike a trust contest, a claim for reformation of a trust based on mistake is subject to a three-year statute of limitations. (*Getty v. Getty* (1986) 187 Cal.App.3d 1159, 1168; Code Civ. Proc., § 338, subd. (d).)

7

interpretation of a will is [not] a 'contest,' although such proceedings might result in invalidation of certain of the will's provisions."].)  Rather than thwarting the donor's intent, a petition for construction or reformation " 'serves to ascertain and enforce that intent.' "  (*Donkin*, at p. 434; see also *Graham v. Lenzi* (1995) 37 Cal.App.4th 248, 258–259 [declaratory relief claims for construction of trust did not violate no contest clause because they sought "to ascertain the true meaning of the trustors' intent rather than to thwart their wishes in creating the Trust"].)  To that end, section 15409, subdivision (a) provides that, "[o]n petition by a trustee or beneficiary, the court may modify the administrative or dispositive provisions of the trust . . . if, owing to circumstances not known to the settlor and not anticipated by the settlor, the continuation of the trust under its terms would defeat or substantially impair the accomplishment of the purposes of the trust."

Similarly, it is well established that California courts have the equitable power to modify the terms of a trust where the modification is necessary to " 'serve the original intentions of the trustor.' "  (*Ike v. Doolittle* (1998) 61 Cal.App.4th 51, 80, italics omitted.)  "The purpose of reformation is to carry out the wishes of the testator, and the remedy reflects no judgment other than a preference for disposition pursuant to the wishes of the testator."  (*Estate of Duke* (2015) 61 Cal.4th 871, 892; see also *Panterra GP, Inc. v. Superior Court* (2022) 74 Cal.App.5th 697, 713–714 ["Reformation is not the court *creating* a *new* agreement but rather *enforcing* the *actual* agreement *already made* by the parties."].)  Thus, a beneficiary may petition the probate court to reform a trust that, due to a mistake, does not accurately reflect the trustor's intent.  (*Estate of Duke*, at p. 889.)  Moreover, a reformation petition that does not question the validity of a trust, but instead

seeks to determine and implement the trustor's intent, is not a contest. (*Giammarrusco, supra*, 171 Cal.App.4th at pp. 1602, 1607.) " 'In such a case, the beneficiary is seeking merely to determine and to protect the donor's intention and is not seeking to circumvent it.' " (*Id*. at p. 1607 [quoting Restatement (Third) on Trusts, § 8.5, com. d, p. 198].)

Here, Scott does not seek to nullify his father's trust. He does not question the *validity* of the amendment by contending, for example, that Newton did not have the capacity to make the amendment, and it was therefore void. (See *Giammarrusco, supra*, 171 Cal.App.4th at pp. 1607–1608.) Rather, he argues that Newton always intended his assets to be divided equally between his two children, and the handwritten "one-half" interlineation reflects his mistaken belief that he was accomplishing that goal. Scott's petition specifically alleges: "Trustor erroneously believed that the statement, 'From the remaining trust estate, SCOTT ERIC PACKARD shall receive a sum equal to 'one-half' the value of the trustor's residence as determined by a certified real estate appraisal obtained from an independent appraiser chosen and agreed upon by both GREGORY ROY PACKARD and SCOTT ERIC PACKARD,' would ensure that each of his sons would receive distributions from the Trust that are equal in value." The argument is that the handwritten interlineation merely reflects a mistake on the part of Newton in expressing his true intent. This does not constitute a trust contest. (*Giammarrusco, supra*, 171 Cal.App.4th at p. 1607.)

In resisting this conclusion, Greg contends that the probate court correctly found that the word "one-half" is not susceptible to more than one interpretation, so it does not create an ambiguity requiring extrinsic evidence to ascertain its true meaning. But the Supreme Court has rejected this argument, explaining that extrinsic evidence is admissible to determine the

9

intent of a donor in certain circumstances even where the donative document appears unambiguous. (*Estate of Duke, supra*, 61 Cal.4th at pp. 875–876, 887.) In *Estate of Duke*, the court reconsidered and abandoned the historical rule that extrinsic evidence is inadmissible to reform an unambiguous will. (*Id.* at pp. 875–876.) As the starting point for its analysis, the court recognized that extrinsic evidence is generally admissible to correct errors in other types of donative documents. (*Id.* at pp. 886–887.) The court concluded that imposing a clear and convincing evidence burden of proof adequately addresses any concerns where the principal witness (the donor) is deceased. (*Id.* at pp. 889–893.)

Although *Estate of Duke* involved a will, its logic applies equally to the reformation of a trust. The court itself relied on case law allowing the use of extrinsic evidence to correct errors in trusts and included a parenthetical description of one case as holding that "after trustors' deaths, reformation [is] allowed to correct a drafting error." (*Estate of Duke, supra*, 61 Cal.4th at p. 887 [citing *Ike v. Doolittle* (1998) 61 Cal.App.4th 51].) Reformation of a trust is therefore permitted even where the language appears facially unambiguous, so long as clear and convincing evidence establishes: (1) that the trust contains a mistake in the donor's expression of intent at the time it was drafted; and (2) the donor's actual specific intent at the time the trust was drafted. (See *Estate of Duke*, at p. 898.) A contrary result "would defeat the [trustor]'s intent and result in unjust enrichment of unintended beneficiaries." (*Id.* at p. 890.) We therefore conclude that Scott's petition is one for reformation of the trust to conform to the trustor's true intent, and he may prove it through use of extrinsic evidence.

So understood, Scott's petition cannot be treated as a contest of the trust. "As the California Law Revision Commission has explained in

10

discussing no contest clauses: . . . 'A beneficiary should not be punished for bringing an action to ensure the proper interpretation, *reformation*, or administration of an estate plan. Such actions serve the public policy of facilitating the fair and efficient administration of estates and help to effectuate the trustor's intentions, which might otherwise be undone by *mistake*, *ambiguity*, or changed circumstances.' " (*Giammarrusco, supra*, 171 Cal.App.4th at p. 1607 [quoting Recommendation: Revision of No Contest Clause Statute (Jan. 2008) 37 Cal. Law Revision Com. Rep. (2007), p. 395].) In practical terms, Scott is not contesting the trust; he is seeking its reformation to correct an alleged mistake in the trustor's written expression of his own intent.

This result is consistent with the rule that a no-contest clause must be strictly construed and may not extend beyond what plainly was the trustor's intent. (*Perrin v. Lee* (2008) 164 Cal.App.4th 1239, 1248–1249.) Newton did not manifest any intent to disqualify a named beneficiary for seeking to correct an alleged drafting error in Newton's own expression of his intended division of property.

We recognize that some cases preceding *Estate of Duke* stated that the word "contest" as used in a no-contest clause "means any legal proceeding designed to result in thwarting of the testator's wishes *as expressed in the will*" or trust and that courts "may not rewrite the [donative document] in such a manner as to exempt from the reach of the no-contest clause legal proceedings plainly intended to frustrate the testator's intent *as expressed*" in the donative document. (*Estate of Friedman* (1979) 100 Cal.App.3d 810, 817–818, italics added; see also *Estate of Kazian* (1976) 59 Cal.App.3d 797, 802 ["The word 'contest' may mean 'any legal proceeding which is designed to result in the thwarting of the testator's wishes as expressed in his will.' "].)

11

To the extent this language might be read to suggest that any petition for reformation of unambiguous language necessarily constitutes a trust contest, we do not believe it can survive the Supreme Court's 2015 elimination of "the historical rule that extrinsic evidence is inadmissible to reform an unambiguous will." (*Estate of Duke, supra*, 61 Cal.4th at p. 875.)

Greg's argument to the contrary conflates the merits of Scott's claim with the nature of Scott's claim. As Scott points out, a meritless reformation petition is still a reformation petition. It cannot be the case that the answer to whether a petition is deemed a contest to the trust or a request to reform the trust depends on how persuasive the extrinsic evidence is of the trustor's intent—that goes to the merits of the petition. To conclude otherwise would contradict the Supreme Court's holding that extrinsic evidence is admissible to determine the trustor's intent even where the donative document is unambiguous, and it would also undermine the purpose of reformation. (*Estate of Duke, supra*, 61 Cal.4th at pp. 886–887, 892.)[4] We therefore conclude that the probate court erred when it found that Scott's petition was a contest to the trust and dismissed it based upon the limitations period that applies only to such contests.

Our conclusion that Scott's petition is not a trust contest does not establish either that the trust contains a mistake or that Newton's actual

---

[4]    A more obvious example better illustrates the point: if Scott had a video that showed Newton writing the word "one-half" into the first amendment to the trust in 2014 while stating that his intent in so doing was to ensure his assets were divided equally between his sons, such evidence would clearly reflect that Newton's true intent was as is now asserted by Scott. We assume in that scenario Greg would not dispute that Newton's true intent would be effectuated by reforming the petition, despite the trust's facially unambiguous use of "one-half." The fact that Scott may not have such clear evidence does not transform his petition to reform into a trust contest.

12

specific intent at the time he drafted the amendment was as Scott claims. (*Estate of Duke, supra*, 61 Cal.4th at p. 898.) However, the petition adequately alleges these facts to be true for purposes of surviving a motion for judgment on the pleadings. As in *Estate of Duke*, "the alleged mistake concerns [Newton]'s actual intent at the time he wrote the [trust]," and "the alleged mistake and intent are sufficiently specific." (*Id.* at p. 897 [concluding that ambiguous will could be reformed and extrinsic evidence was admissible to demonstrate that the donor's "intent was inartfully expressed"].) Also like the plaintiffs in *Estate of Duke*, Scott's "theory alleges 'a mistake in the rendering of terms that the testator has authored or approved. The remedy in such a case has exactly the dimensions of the mistake. The term that the testator intended is restored.'" (*Ibid.*)

We express no opinion on the merits of Scott's petition, only that he must be given the opportunity to prove by clear and convincing evidence that Newton's intent was to have each son receive an equal distribution of the trust assets. We therefore reverse the probate court's ruling and direct the court to enter an order denying the motion for judgment on the pleadings.[5]

---

[5] In light of this conclusion, we need not reach Scott's remaining arguments.

## DISPOSITION

The order granting judgment on the pleadings is reversed and the case is remanded to the probate court for further proceedings consistent with this opinion.  Scott is awarded his costs on appeal.

BUCHANAN, J.

WE CONCUR:


DATO, Acting P. J.


DO, J.